No. 86,325

Levoi D. Easterwood, *Appellant*, v. State of Kansas, *Appellee*.

(44 P.3d 1209)

Opinion filed April 19, 2002.

*Sarah Ellen Johnson,* assistant appellate defender, argued the cause, and *Rebecca Woodman,* assistant appellate defender, and *Steven R. Zinn,* deputy appellate defender, were with her on the briefs for appellant.

*Michael A. Russell,* assistant district attorney, argued the cause, and *Nick A. Tomasic,* district attorney, and *Carla J. Stovall,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Larson, J.: This K.S.A. 60-1507 appeal raises the question of whether a criminal defendant who has had the opportunity to challenge his felony-murder charge but knowingly waived that right and pled guilty to felony murder and other charges in order to obtain a favorable plea agreement is entitled to collaterally attack his convictions to benefit from a favorable ruling in a later appeal by a different party on the precise legal issue which he willingly waived.

We hold the defendant is bound by his plea agreement and receives no benefit from the later ruling which we do not apply retroactively, and we affirm the trial court.

We first set forth in detail the factual background, procedural history, and timing of the events which bring this question before our court.

In late November 1995, LeVoi D. Easterwood, and his cousin, Anthony Birch, entered an Osco store in Kansas City, Kansas, late in the evening. Both were armed with guns. They hid in the back of the store until closing. When the store closed, they came out from their hiding place and proceeded to rob the store.

They forced the store manager to open the safe and hand over approximately $1,500. They held five other employees captive and moved the parties toward the back of the store in order to complete the robbery. One of the employees later gave a statement identifying Easterwood as saying to Birch that they should kill all the witnesses.

At Birch's request, the store manager opened the back door where they were confronted by Kansas City police officers. Easterwood ran to the front of the store where he found three more police officers. He dropped his gun.

Birch shot at the police officers near the back of the store, who returned fire killing Birch. Easterwood ran to a nearby cemetery, where he was captured and arrested.

Easterwood was charged in December 1995 with felony murder, K.S.A. 21-3401 (off-grid person felony), aggravated robbery, K.S.A. 21-3427 (severity level 3 person felony), and six counts of kidnapping, K.S.A. 21-3420 (severity level 3 person felony). Attorney James F. Foster was appointed to defend Easterwood.

A preliminary hearing was held. A motion to suppress a confession was filed and argued. A motion to dismiss contended the felony-murder statute was unconstitutionally vague. Plea negotiations were held. During the selection of the jury to try the case, a plea agreement was reached.

Easterwood executed a Petition to Enter a Plea of Guilty, in which he stated:

A. He was 25 years of age and had completed 14 years of schooling.

B. He acknowledged he was not under any limitation, understood the charges against him, had fully informed his lawyer of all facts and had been counseled on all possible defenses.

C. He stated he had been informed of the maximum sentence that could be entered. He agreed to plead guilty to felony murder, aggravated robbery and one count of kidnapping. The State and defendant agreed to request 20 years' sentence of Life with parole eligibility after 15 years plus 5 years. It was stated in paragraph 12 that "no additional charges filed in Wy. Co. in relation to statement given."

D. In printed language, paragraph 14, which was agreed to by Easterwood, stated:

"14. I know that the court will not permit anyone to plead 'Guilty' who maintains he/she is innocent, and with that in mind, and because I am 'Guilty' and not innocent, I wish to plead 'Guilty' and respectfully request the court to accept my plea."

A guilty-plea hearing was held after the plea agreement was reached. The facts as previously stated herein were recited by counsel and Easterwood. A detailed plea colloquy was held, five kidnapping charges were dismissed, and Easterwood pled guilty to felony murder, aggravated robbery, and one count of kidnapping. The trial court said:

"Mr. Easterwood, I am gonna accept your plea of guilty to those three charges because I find that your plea was freely, voluntarily and because you are, in fact, guilty as charged, not out of ignorance, fear, inadvertence or coercion and with full understanding of its consequences. I further find you have admitted the essential elements of the crime charged and that you are mentally competent here in open court this April 22nd, 1996."

The sentencing hearing was held on June 6, 1996. The parties asked the sentencing court to sentence Easterwood as agreed to in the plea agreement. The judge stated that he assumed a hard 40 sentence was not involved. Easterwood's counsel responded that because the plea was to felony murder, there would be a life sentence and his client would be eligible for parole after serving 15 years but the plea agreement required a 5-year sentence in addition

to that. Easterwood was asked if he wished to address the court, and he said:

"Yes. I am fully aware of the crimes that I committed and I'm prepared to pay for those crimes. I apologize to the victims and also my family for what I've done. I'm not an ignorant man. I'm well educated so I understand the circumstances, everything that happened, and I would just hope that the court would agree to the pre-ordained sentence and stick to that.

"That's pretty much all I have to say, Your Honor."

The sentencing judge followed the plea agreement and sentenced Easterwood to life with eligibility for parole after 15 years on the felony-murder conviction and consecutive sentences of 51 months for the aggravated robbery conviction and a downward departure to 9 months for the kidnapping conviction. Easterwood began serving his sentence, and no appeal was taken.

Nothing further occurred until February 3, 2000, when Easterwood challenged his convictions by filing a K.S.A. 60-1507 action in which he alleged ineffective assistance of counsel, he was improperly informed of the potential penalties, insufficient evidence to support a finding of guilt of felony murder, violations of K.S.A. 22-3210 by accepting his pleas without specifically finding that he knew the elements of the crimes charged, and various constitutional violations.

The judge who had sentenced Easterwood appointed counsel to represent him and held a 60-1507 hearing in which Easterwood and his trial counsel, James Foster, both testified.

In response to questions asked about the plea negotiations, Foster stated:

"Q. Okay. The felony murder in this case, was it somewhat unusual because of the factual — the facts in this case?

"A. It was, Judge, because the — the individual — the deceased I think was a relative of Mr. Easterwood's, and he was also involved in a robbery — in a — in an aggravated robbery charge a Osco Drug Store. He was killed by he police when they went to investigate. I think a large number of police officers arrived at Osco and, during the I guess trying to capture the relative, ended up shoot — the police ended up shooting him. So it wasn't a typical felony murder type case in which an innocent bystander might have been killed during the commission of a robbery or something on those lines.

"Q. And had you done any research into the case law into this matter in your defense of Mr. Easterwood?

"A. Yes, I did, and I gave — I don't recall if I actually gave Mr. Easterwood a copy of a case that I got from the Kansas Reports. I know I discussed it with him if I didn't and I gave the name, and the cite, and — and a — I can't remember if I asked him if they had access to law books, but I think I actually gave him a copy of the case on felony murder in which Justice Lockett wrote a dissenting opinion, and it was the closest type of case that I could find that — it was a difficult case. In my mind, it was difficult pleading someone to the felony murder, because I did not believe that that was the purpose of the felony murder rule —

"Q. Di—

"A. — but I found a case and — that — that I think was as close as possible. Justice Lockett was — wrote a dissenting opinion, even though they found a person guilty of felony murder in the — in the most similar situation that with Mr. Easterwood, the possibility if he were convicted, he'd have a right to appeal, and there was several judges who had dissented in the opinion, so he might have a chance on appeal on that issue. But the problem was, he was — in a fairly — fairly strong case against him on all the other charges, so that even if he won the felony murder case — he was in front of Dexter — Judge Dexter Burdette. You were going to a- — the prosecution was asking for consecutive sentences. It w- — he was just in a no-win situation.

"Q. Okay, so up to the plea, were — were you and Mr. Easterwood talking about that if — even if he was convicted, that you would have an appeal right at least to whether the facts in this case supported a conviction for felony murder?

"A. That's correct.

"Q. And had you conveyed that or spoke — had you and Mr. Easterwood discussed this during this entire time?

"A. Yes.

"Q. And what was his feelings as to what you should do —

"A. Uh —

"Q. — if you recall?

"A. I mean, he — he didn't — like any — any person charged with a crime and not sure — he didn't want — necessarily want to plead to felony murder and — and the other charge; but there weren't any alternatives, other than going to trial and maybe getting all charges run consecutive, getting a larger sentence —"

Foster, in later questions, explained his concern regarding consecutive sentences being entered and the difficulty of the case:

"Q. Okay. What — you had indicated that — that you felt this was a difficult case of felony murder to plead because of the circumstances, and you've also indicated, you know, you hoped the jury may disregard it. In your experience, do you think that this would also have been a difficult case for the jury to convict on?

"A. I don't think so, and — and the reason I — one of the main reasons I was concerned about it is, one of the witnesses had given a statement that — i- — identifying Mr. Easterwood as stating to the other — the deceased that they should kill all the witnesses —

"Q. Uh-huh.

"A. — which, in my opinion, if they heard that, the Court was going to do everything in their power to run the sentences consecutive —

"Q. Uh-huh. Okay.

"A. — if he's convicted."

As to other crimes with which Easterwood was charged, Foster testified as follows:

"Q. Okay. Was Mr. Easterwood charged in any other cases besides the one we're here talking about today, the 95CR2297?

"A. Originally, he was charged with two other aggravated robberies."

Foster and Easterwood offered conflicting testimony on the movant's claim that he was told a "hard 40" could be assessed. Foster stated he had told Easterwood that his sentence would exceed 40 years if he was found guilty of all charges and all sentences were run consecutively. Easterwood said Foster had told him he could be subject to a hard 40 sentence.

There were questions by Easterwood's counsel about whether the double-double rule in guideline sentencing would apply. It was argued this might have limited the time served to 32 years.

When asked why he changed his mind during jury selection and decided to plead, Easterwood stated that he believed he could be sentenced to as much as 49 years as opposed to the offered 20 years. He admitted that the "the state's evidence was pretty strong. And I — I figured that I was going to get convicted of felony murder as well — regardless of the defense —." He admitted that while Foster recommended the plea, Foster did not coerce him in any manner. Easterwood admitted that he made the decision that day to accept the plea.

The court questioned Easterwood's appointed counsel as to whether Easterwood understood the risk that if his requested relief was granted and all the charges were placed back against him and he was allowed to go to trial that he could be sentenced to a longer term than what he had already been sentenced to. Counsel stated

that had been explained to Easterwood several times and that he was willing to take that risk. Easterwood confirmed this statement.

In ruling on the K.S.A. 60-1507 motion, the court stated there was a very strong factual statement to support guilty findings on the charges of aggravated robbery and kidnapping of six people. As to the charge of felony murder, the defense that both felons were trying to surrender might have been an arguable point to the jury but was not a legal defense upon which the court could direct a verdict. The court did mention that "there's probably a strong likelihood that — that a jury would convict [Easterwood]" on the charge of felony murder.

The court found that Easterwood had ample time to consider the plea, that it was properly agreed to, that the trial court and his counsel had told Easterwood he was possibly facing a longer sentence than under the plea agreement, and that Easterwood knowingly elected to "take the plea."

The court found that counsel's stating the sentence could have exceeded 40 years was not ineffective assistance, even though the court believed the minimum sentence would have been 32 years if run consecutively. The court found that Easterwood determined on his own to accept the plea agreement rather than submit his defense to the jury. The court said:

"You had the right to do so. You elected not to do it, and you elected not to do it when you knew what the possible sentences were that were — going to be recommended; and for that reason, I am going to deny your petition at this time."

A journal entry of this order was filed October 4, 2000, and a notice of appeal was filed on October 13, 2000.

Easterwood's 60-1507 court-appointed counsel was allowed to withdraw and the appellate defender's office was appointed to take the appeal. The issues for appeal are those raised by the 60-1507 motion, the evidence presented at the hearing, and the rulings of the trial judge.

The issues changed shortly thereafter because on March 9, 2001, this court filed its opinions in *State v. Sophophone* 270 Kan. 703, 19 P.3d 70 (2001), and *State v. Murphy*, 270 Kan. 804, 19 P.3d 80 (2001). The facts in *Sophophone* were almost identical to Easter-

wood's situation, with the exception that Sophophone had been in custody for some time when his co-felon was killed by the lawful act of a police officer returning fire. Easterwood was in the process of fleeing from the aggravated robbery when his co-felon Branch was shot. This was a factual difference, but the deaths in both cases resulted from the lawful act of a law enforcement officer. Our precise holding in *Sophophone* was:

"A felon may not be convicted of felony murder pursuant to K.S.A. 21-3401(b) for the killing of his co-felon, caused not by his acts or actions but by the lawful acts of a law enforcement officer acting in self-defense in the course and scope of his duties in apprehending the co-felon, who was fleeing from an aggravated burglary in which both felons had participated." 270 Kan. 703, Syl. ¶ 6.

The decision in *Murphy* was similar, but there the death of the co-felon resulted from returned gunfire of a victim, not from the actions of a law enforcement officer. We held:

"[A] felon may not be convicted of felony murder pursuant to K.S.A. 21-3401(b) for the killing of his co-felon caused not by his acts or actions but by the lawful acts of a victim of aggravated robbery and kidnapping acting in self-defense for the protection of his residence and the occupants thereof." 270 Kan. 804, Syl. ¶ 2.

There was a strong dissent in the *Sophophone* case by Justice Abbott, which was joined by Chief Justice McFarland and Justice Davis. The same three justices dissented in the *Murphy* case.

The majority's reasoning adopted the agency approach rather than the proximate cause line of cases and construed the felony-murder statute strictly in favor of the accused. It distinguished and held that its ruling was not inconsistent with *State v. Hoang*, 243 Kan. 40, 755 P.2d 7 (1988) (the case obviously referred to in attorney Foster's testimony, where Justice Lockett dissented and two other justices joined), or *State v. Lamae*, 268 Kan. 544, 998 P.2d 106 (2000).

The *Sophophone* dissent argued that the acts should constitute felony murder — a result dictated by following *Hoang*, that the statutory language of K.S.A. 21-3401 should control, and that the cases cited from other jurisdictions more logically followed the proximate cause approach.

With these decisions now available, Easterwood's arguments on appeal, when his brief was filed in August 2001, changed and became:

"(1) Under the Kansas Supreme Court's interpretation of the felony murder statute, Le-Voi D. Easterwood did not commit felony murder, so his conviction should be vacated or his guilty plea withdrawn,

"(2) The trial court erred when it denied Mr. Easterwood's motion to withdraw his plea because the record did not establish a factual basis for a plea of guilty to felony murder,

"(3) The trial court erred when it denied Mr. Easterwood's motion to withdraw his plea because Mr. Easterwood was misinformed abut the possible penalties he faced."

Diligent appellate counsel now argue that the *Sophophone* and *Murphy* decisions must be applied retroactively to allow Easterwood to attack his conviction on collateral review because of the decision of the United States Supreme Court in *Bousley v. United States*, 523 U.S. 614, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). In *Bousley*, the defendant, who was convicted of using a firearm under 18 U.S.C. § 924(c) (1988), was allowed to challenge that conviction in a collateral proceeding as the result of the Court's ruling in *Bailey v. United States*, 516 U.S. 137, 144, 133 L. Ed. 2d 472, 116 S. Ct. 501 (1995), which construed 18 U.S.C. §924(c)(1) in a manner which might have had the effect of not covering Bousley's actions.

The State argues that Easterwood's plea of guilty was valid because at the time it was made, *Hoang* would logically be interpreted to justify Easterwood's felony-murder conviction; language; in *State v. Branch & Bussey*, 223 Kan. 381, 383-84, 573 P.2d 1041 (1978), pointed to a rule that felony murder existed if the participants could "reasonably foresee or expect that a life might be taken"; Easterwood received a beneficial plea agreement with a lesser sentence than he might otherwise have received; and Kansas has recognized that a court can accept a plea in which the evidence does not support the charge, citing *State v Reed*, 254 Kan. 52, 865 P.2d 191 (1993). The State further argues these issues were not properly raised in the trial court and may not be raised for the first time on appeal. Finally, the State argues the transcript of the plea

hearing clearly shows that Easterwood was fully apprised of the maximum sentences that might be entered for the crimes for which he was charged.

We initially consider the State's argument that the primary issue on which Easterwood now relies was not presented to the trial court and may not be considered for the first time on appeal. See *State v. Ninci*, 262 Kan. 21, Syl. ¶ 8, 936 P.2d 1364 (1997). We stated in *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998), that there are three exceptions to this general rule in cases where:

"(1) the newly asserted theory involves only a question of law arising on proved or admitted facts which is finally determinative of the case; (2) questions are raised for the first time on appeal if consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of a trial court may be upheld on appeal although that court may have relied on the wrong ground or assigned a wrong reason for its decision. *State v. Bell*, 258 Kan. 123, 126, 899 P.2d 1000 (1995); see *Pierce v. Board of County Commissioners*, 200 Kan. 74, Syl. ¶ 3, 434 P.2d 858 (1967)."

Because the *Sophophone* and *Murphy* decisions were not filed until after Easterwood's 60-1507 hearing was held, the issues were admittedly not raised below. But, Easterwood has raised contentions of denial of his fundamental rights, the facts surrounding the plea agreement and the reasons therefore were fully developed below, and questions of law appear to exist which will be finally determinative of this case. No good reason appears to us to not consider and resolve the issues that have been raised on appeal, despite the fact that all were not considered by the trial court.

Our standard of review of the trial court's findings of fact is to determine if they are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). Our review of conclusions of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

As to questions involving alleged ineffective assistance of counsel, the performance and prejudice prongs are mixed questions of law and fact requiring de novo review. *State v Sperry*, 267 Kan. 287, 297, 978 P.2d 933 (1999). See *Chamberlain v. State*, 236 Kan.

650, 656-57, 694 P.2d 468 (1985) (adopting the holdings of *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 [1984]). The appropriate standard of review on the question of whether a plea after sentencing should be allowed to be withdrawn "to correct manifest injustice," see K.S.A. 2001 Supp. 22-3210(d), is whether the trial court abused its discretion. *State v. Shears*, 260 Kan. 823, 829, 925 P.2d 1136 (1996).

We begin our analysis of the issues raised by providing a bit of historical background on how courts have applied civil decisions involving criminal issues retroactively, by noting that K.S.A. 60-1507 proceedings were held in *State v. Richardson*, 194 Kan. 471, 472-73, 399 P.2d 799 (1965), to be a civil action (citing *Heflin v. United States*, 358 U.S. 415, 3 L. Ed. 2d 407, 79 S. Ct. 451 [1959]). *Richardson* teaches that K.S.A. 60-1507 follows the language of a federal statute, see 28 U.S.C. § 2255 (1994), and the body of law developed thereunder should be given great weight in construing K.S.A. 60-1507. 194 Kan. at 472. This is important in Easterwood's appeal, as it is clearly before us on collateral review involving what we believe is a new decision of substantive criminal law which Easterwood declined to challenge when he had the opportunity to do so.

It is also important to point out that the appeal we face does not involve a constitutional rule of criminal procedure, such as this court recently faced in *Whisler v. State*, 272 Kan. 864, 36 P.3d 290 (2001), and earlier in *State v. Neer*, 247 Kan. 137, 795 P.2d 362 (1990). The *Whisler* opinion involved the question of whether *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), which our court followed in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001), was required to be applied retroactively. Justice Allegrucci, speaking for our unanimous court, reviewed *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), which held a new rule of constitutional criminal procedure is not to be applied retroactively on collateral review unless (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law—making authority to proscribe, or (2) it is a watershed requiring the observance of those procedures

that are implicit in the concept of ordered liberty. *Whisler*, 272 Kan. 864, Syl. ¶ 1. Our opinion in *Neer*, which we will discuss in detail later, had previously recognized and applied *Teague* shortly after it was decided. See 247 Kan. at 141-43. The reasoning and decisions behind this now-existing rule involving constitutional rules of criminal procedures are set out in Tribe, American Constitutional Law, § 3-3, pp. 227-35 (3d ed. 2001); 1 LaFave, Israel, and King, Criminal Procedure, § 2.10, pp. 684-702 (2d ed. 1999).

While the foregoing rules apply to situations involving procedural rules, a different rule applies where substantive law is in issue. "[A]s related to criminal law and procedure, substantive law is that which declares what acts are crimes and prescribes the punishment therefore; whereas procedural law is that which provides or regulates the steps by which one who violates a criminal statute is tried and punished." *State v. Nunn*, 244 Kan. 207, Syl. ¶ 9, 768 P.2d 268 (1989); *State v. Hutchinson*, 228 Kan. 279, Syl. ¶ 8, 615 P.2d 138 (1980). The most common situation where this distinction is in issue relates to statutory changes. See, *e.g.*, *State v. Moon*, 15 Kan. App. 2d 4, Syl. ¶ 3, 801 P.2d 59 (1990), *rev. denied* 248 Kan. 998 (1991), where the court stated the general rule that "a statute operates prospectively unless its language clearly indicates a contrary legislative intent. The general rule is modified and the statute is given retroactive effect where the statutory language is merely procedural or remedial in nature."

When an appellate court issues a new rule relating to whether the death of a co-felon at the hands of a lawful act of a law enforcement officer during the commission of an aggravated robbery subjects the surviving co-felon to prosecution for felony murder, that rule involves a question of substantive law and must be so treated in considering its retroactive effect.

Several recent decisions of the United States Supreme Court discuss the precise issue we face: collateral review as to the retroactivity of a decision in one case on the outcome of others. 6 LaFave, Israel, and King, Criminal Procedure § 28.9, p. 133 (2d ed. 1999), after discussing *Teague* under 28 U.S.C. § 2255, states:

"Even if claims of error based upon new procedural rulings may be *Teague*-barred, *claims based on new substantive rulings are not. Specifically, a court may*

*not refuse to hear an applicant's claim that he is entitled to the benefit of a decision
the Supreme Court, delivered following his conviction, that the federal criminal
statute under which he was convicted does not reach his conduct.* In *Bousley v.
United States*, the Court considered whether *Teague* should be applied to bar
relief under § 2255 for a prisoner who, relying on a decision of the Supreme Court
holding that the crime he was charged with violating did not reach his conduct,
claimed that he was misinformed about the elements of his offense, and as a result,
pleaded guilty to a crime he did not commit. The Court rejected the application
of *Teague* to this issue of 'substance' rather than procedure, and concluded that
'it would be inconsistent with the doctrinal underpinnings of habeas review to
preclude petitioner from relying on our decision * * * in support of his claims that
his guilty plea was constitutionally invalid.' " (Emphasis added.)

With *Bousley* now being the centerpiece of Easterwood's argu-
ments and his contention that his circumstances fit under its de-
cision, we examine *Bousley* in more detail. Bousley pled guilty to
"knowingly and intentionally us[ing] . . . firearms during and in
relation to a drug trafficking crime" in violation of 18 U.S.C. §
924(c). He did not directly appeal the validity of his guilty plea.
Several years later, he challenged the factual basis of his plea in a
habeas corpus (28 U.S.C. § 2255) motion. The federal district court
found the factual basis to be sufficient because at the time of the
crime, there were guns in the defendant's bedroom in close prox-
imity to the illegal drugs. The trial court denied the motion, but
during the pendency of defendant's appeal, a United States Su-
preme Court decision was rendered that clarified the phrase
"use . . . firearms" to mean "active employment of the firearm."
*Bailey v. United States*, 516 U.S. at 144. Mere placement of a
firearm next to drugs was not enough. 516 U.S. at 149. Bousley
argued that *Bailey* should be applied retroactively; however, the
Eight Circuit Court of Appeals refused to do so and affirmed the
district court. *Bousley v. Brooks*, 97 F.3d 284, (8th Cir. 1996).

The Supreme Court reversed and remanded. *Bousley v. United
States*, 523 U.S. at 618, 624. The Court first recited the well-ac-
cepted rule that "[a] plea of guilty is constitutionally valid only to
the extent it is 'voluntary' and 'intelligent.' *Brady v. United States*,
397 U.S. 742, 748[, 25 L. Ed. 2d 747, 90 S. Ct. 1463] (1970)." 523
U.S. at 618. The Court refused to limit the retroactive application

of *Bailey*, and set forth the following test for determining whether defendant's plea was valid:

"Petitioner nonetheless maintains that his guilty plea was unintelligent because the District Court subsequently misinformed him as to the elements of a § 924(c)(1) offense. In other words, petitioner contends that the record reveals that neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged. *Were this contention proven, petitioner's plea would be,* contrary to the view expressed by the Court of Appeals, *constitutionally invalid.*" (Emphasis added.) 523 U.S. 618-19.

The *Bousley* opinion explained the justification and necessity of applying *Bailey* even on collateral review, distinguished *Teague* as applying only to procedural rules, and stated:

"By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct ' "beyond the power of the criminal lawmaking authority to proscribe,' " [*Teague*] at 311 (quoting *Mackey* [*v. United States,* 401 U.S. 667,] 692[, 28 L. Ed. 2d 404, 91 S. Ct. 1160]), necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.' *Davis v. United States,* 417 U.S. 333, 346[, 41 L. Ed. 2d 109, 94 S. Ct. 2298] (1974)." 523 U.S. at 620.

The Court then stated that because only Congress and not the courts can make conduct criminal, "[a]ccordingly, it would be inconsistent with the doctrinal underpinnings of habeas review to preclude petitioner from relying on our decision in *Bailey* in support of his claim that his guilty plea was constitutionally invalid." 523 U.S. 620-21.

*Bousley* continued with a procedural discussion relating to limitations on allowing collateral attacks where pleas were voluntarily made and not challenged on direct appeal (which neither Bousley nor Easterwood did). The desirability of finality was stated to have " 'special force with respect to convictions based on guilty pleas.' *United States v. Timmreck,* 441 U.S. 780, 784, 60 L. Ed. 2d 634, 99 S. Ct. 2085 (1979)." 523 U.S. at 621.

Finally, the *Bousley* opinion stated that the failure to raise the issue on direct appeal allowed it only to be raised on habeas where there is "cause," actual "prejudice," or that he is "actually innocent." 523 U.S. at 622. Bousley attempted explanations for his default was deemed insufficient, but his case was remanded to permit

him to attempt to make a showing of "actual innocence," not mere legal insufficiency, with this direction:

"See *Sawyer v. Whitley*, 505 U.S. 333, 339, 120 L. Ed. 2d 269, 112 S. Ct. 2514 (1992). In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey*. In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." 523 U.S. at 624.

We have no Kansas decisions applying *Bousley* but, as we have previously stated in citing *Richardson*, the reliance on 28 U.S.C. § 2255 in enacting K.S.A. 60-1507 would appear to require us to give great weight to *Bousley*. See Coffman, *Habeas Corpus in Kansas: The Great Writ Affords Postconviction Relief at K.S.A. 60-1507*, 67 J.K.B.A. 16, 17 (1998). *Bousley* has been applied several times by the Tenth Circuit Court of Appeals, but so far only in the context of 18 U.S.C. 924(c). See, *e.g., United States v. Leopard*, 170 F.3d 1013, 1016 (10th Cir. 1999); *United States v. Powell*, 159 F.3d 500, 501-02 (10th Cir. 1998).

A split appears to already exist between the circuit courts on that portion of the *Bousley* opinion relating to the necessity of showing actual innocence of more serious charges which the government has forgone in the course of plea bargaining. See *Latorre v. United States*, 193 F.3d 1035 (8th Cir. 1999). There is a disagreement whether a "more serious charge" is measured by the statutory maximum or by the recommended sentence under sentencing guidelines. Compare the majority and dissenting opinion in *United States v. Halter*, 217 F.3d 551 (8th Cir. 2000). See King and Klein, *Aprs Apprendi*, 12 Fed. Sent. Rep. 331, 342 n.50 (2000).

Easterwood argues that his guilty plea was not constitutionally knowingly entered. The United States Supreme Court recently held that an accused's Pennsylvania state court conviction violated due process when he was convicted of violating a state statute prohibiting the operation of a hazardous waste facility without a permit when the State ultimately conceded that the accused in fact had a

permit. *Fiore v. White*, 531 U.S. 225, 148 L. Ed. 2d 629, 121 S. Ct. 712 (2001).

The facts of *Fiore* differ from ours (as do *Bousley's*), but the underpinning of its decision appears to rest on whether a Pennsylvania Supreme Court interpretation announced a "new rule of law" or merely clarified the plain language of the statute. The *Fiore* case is summarized as follows: Fiore was convicted of violating a Pennsylvania statute which prohibited the operation of a hazardous waste facility without a permit. The State conceded that Fiore in fact had a permit, but argued that Fiore had deviated so dramatically from the permit's terms that he nonetheless had violated the statute. Fiore's conviction became final in 1990 after further review was declined. However, in 1993, the Pennsylvania Supreme Court reversed the conviction of a codefendant for the same crime. The court interpreted the state statute for the first time and said that a person who deviated from a permit's terms was not a person without a permit and, hence, did not violate the statute. See *Com. v. Scarpone*, 535 Pa. 273, 634 A.2d 1109 (1993).

Fiore then sought collateral relief in the Pennsylvania state courts. When he was again unsuccessful, he brought a habeas corpus action in federal district court, which granted the writ. However, the United States Court of Appeals for the Third Circuit reversed, expressing the view that the Pennsylvania Supreme Court's 1993 decision had announced a new rule of law and the state courts were under federal constitutional obligation to apply their own decisions retroactively. See *Fiore v. White*, 149 F.3d 221 (3d Cir. 1998). The United States Supreme Court then granted certiorari to determine whether the accused's conviction was inconsistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution and certified to the Pennsylvania Supreme Court the question whether that court's 1993 interpretation of the statute stated the correct interpretation of Pennsylvania law at the date when the accused's conviction became final.

The United States Supreme Court's *Fiore* opinion was *per curiam* and unanimous. It was centered on the reply of the Pennsylvania Supreme Court to the certified question as to the interpre-

tation of state law in *Scarpone,* 535 Pa. at 279, which replied that " '*Scarpone* did not announce a new rule of law. Our ruling merely clarified the plain language of the statute.' " 531 U.S. at 228. The *Fiore* court then stated:

"Because *Scarpone* was not new law, this case presents no issue of retroactivity. Rather, the question is simply whether Pennsylvania can, consistently with the Federal Due Process Clause, convict Fiore for conduct that its criminal statute, as properly interpreted, does not prohibit.

"This Court's precedents make clear that Fiore's conviction and continued incarceration on this charge violate due process. We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. See *Jackson* [*v. Virginia,* 443 U.S. 307,] 316[, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)]; *In re Winship,* 397 U.S. 358, 364[, 25 L. Ed. 2d 368, 90 S. Ct. 1068] (1970). In this case, failure to possess a permit in a basic element of the crime of which Fiore was convicted. *Scarpone, supra,* at 279, 634 A.2d, at 1112. And the parties agree that the Commonwealth presented no evidence whatsoever to prove that basic element. To the contrary, the Commonwealth, conceding that Fiore did possess a permit, see Brief for Respondents 1, necessarily concedes that it did not prove he failed to possess one.

"The simple, inevitable conclusion is that Fiore's conviction fails to satisfy the Federal Constitution's demands. We therefore reverse the contrary judgment of the Third Circuit and remand this case for proceedings consistent with this opinion." 531 U.S. at 229.

It is interesting that the Supreme Court opinion did not disapprove of or comment on any of the following language of Judge Alito's Third Circuit Court of Appeals' *Fiore* opinion:

"The district court held, and Fiore maintains on appeal, that the Due Process and Equal Protection Clauses of the Fourteenth Amendment require retroactive application of *Scarpone.* This conclusion, however, is at odds with the Supreme Court's longstanding position that 'the federal constitution has no voice upon the subject' of retroactivity. *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 364, 53 S.Ct. 145, 77 L. Ed. 360 (1932). *See Solem v. Stumes,* 465 U.S. 638, 642, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); *United States v. Johnson,* 457 U.S. 537, 542, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). While the Court has concluded that some federal criminal decisions should apply retroactively, *see Davis v. United States,* 417 U.S. 333, 346-47, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *United States v. United States Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), it has made clear that state courts are under no constitutional obligation to apply their own criminal decisions retroactively. *Wainwright v. Stone,* 414 U.S. 21, 23-24, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

Thus, just as the Supreme Court has fashioned retroactivity rules for the federal courts based on principles of judicial integrity, fairness, and finality, *see Teague v. Lane*, 489 U.S. 288, 304-310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the state courts are free to adopt their own retroactivity rules after independent consideration of these and other relevant principles. As the Supreme Court explained in *Sunburst Oil*:

'A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward . . . The alternative is the same whether the subject of the new decision is common law or statute. The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts. . . . [W]e are not at liberty, *for anything contained in the constitution of the United States*, to thrust upon those courts a different conception of the binding force of precedent or of the meaning of judicial process.' 287 U.S. at 364-66, 53 S.Ct. 145 (emphasis added) (citations omitted)." 149 F.3d at 224-25.

Nor was there any mention in the Supreme Court's *Fiore* opinion of *Bousley*, which the Circuit Court's *Fiore* opinion had made note of in footnote 4, as follows:

"In holding that the *Davis* retroactivity rule is not required by the Due Process Clause, we join two other circuits. *See Young v. United States*, 124 F.3d 794, 799 (7th Cir.1997); *Brennan v. United States*, 867 F.2d 111, 121 (2d Cir.1989).

"We note that the Supreme Court recently reaffirmed *Davis* in *Bousley v. United States*, [523] U.S. [614, 620], 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998). *Bousley* involved a federal prisoner who filed a motion under 28 U.S.C. § 2255 seeking retroactive application of the Supreme Court's interpretation of 18 U.S.C. §924(c)(1) in *Bailey v. United States*, 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The *Bousley* Court held that *Bailey's* interpretation of § 924(c)(1) was fully retroactive, explaining that 'under our federal system it is only Congress, and not the courts, which can make conduct criminal.' *Bousley*, [523] U.S. at [620-21], 118 S.Ct. at 1610. *See also id.* at 1612 (Stevens, J., concurring) (*Bailey* 'did not change the law. It merely explained what § 924(c) had meant ever since the statute had been enacted.'). Because the *Bousley* decision rested on the Supreme Court's understanding of the balance of power in the federal system, it differs critically from the current case, which involves a state court's refusal to give retroactive effect to a judicial interpretation of a state statute." 149 F.3d at 226.

The result of the United States Supreme Court's *Fiore* decision is compelling, as Fiore had challenged his conviction in every manner possible, as did his codefendant. The reasoning appears to be

primarily based on the answer to the certified question and the fact the absence of a permit was a clear element of the crime.

The Ohio Supreme Court in *Agee v. Russell*, 92 Ohio St. 3d 540, 543-44, 751 N.E.2d 1043 (2001), mentioned both *Bousley* and *Fiore* but held it had no retroactively issue because it did not announce a new rule of law in a related case but rather what the statute in issue had meant since its enactment. The court relied on other grounds to affirm Agee's conviction.

We do have several Kansas cases which must be considered. In *Alires v. State*, 21 Kan. App. 2d 676, 906 P.2d 172 (1995), the petitioner attempted to challenge the propriety of a potentially race-based peremptory strike of a minority juror. Subsequent to Alires' conviction and expiration of his appeals, the decision of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), was expanded in *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), to prohibit striking minority jurors who were a different race or ethnicity than the accused. The Court of Appeals first agreed that "an intervening change in the law between the time of direct appeal and a collateral attack can excuse the failure to raise a constitutional question on direct appeal. *Lassley v. State*, 2 Kan. App.2d 158, 159, 576 P.2d 1094, *rev. denied* 225 Kan. 844 (1978)." *Alires*, 21 Kan. App. 2d at 677. The court found that *Powers* constituted a significant departure from prior case law and, therefore, permitted Alires' argument to be considered under that exception even though not raised below. The court then considered "whether the holding in *Powers* ought to be applied retroactively." 21 Kan. App. 2d at 678. The court quickly dismissed application of the rule in *Powers* based on this court's holding in *State v. Neer*, 247 Kan. 137, Syl. ¶ 3, 795 P.2d 362 (1990): " 'A new constitutional rule of criminal procedure generally will not be applied retroactively to cases on collateral review.' " *Alires*, 21 Kan. App. 2d at 679.

We have previously mentioned *Neer*, but now consider it in more detail, for it directly relates to our history as to retroactivity. In *Neer*, we considered the *Teague* decision, which had then recently been filed. Neer was convicted of two counts of aggravated sodomy. Like Easterwood, he did not challenge the sufficiency of the

evidence on direct appeal. After his appeal time had expired, he moved to modify his sentence. That motion was denied, but during the pendency of that appeal, *State v. Moppin*, 245 Kan. 639, 783 P.2d 878 (1989), was decided. In *Moppin*, we determined that cunnilingus was not included in the statutory definition of criminal sodomy under K.S.A. 21-3501(2). On appeal, Neer claimed that under this standard the evidence in his case was insufficient to support his convictions of aggravated criminal sodomy.

Neer conceded that he did not raise the issue in the lower court, but he claimed that as a matter of fundamental fairness, under *Teague*, he should be permitted to raise the issue. Justice Lockett, speaking for our unanimous court, performed a thorough analysis of *Teague*, stated the standard for reaching the two exceptions was high, and found that Neer's claim met neither. We held that Neer's claim failed because he did not challenge the sufficiency of the evidence on his direct appeal. 247 Kan. at 143-44.

Analyzing *Neer* in the concept of this appeal is instructive. We did not limit the scope of *Teague* to new rules of criminal procedure, although the issue in *Neer* clearly related to the interpretation of a substantive criminal law statute. The proper construction of *Neer* is that a prior conviction of felony murder could not be challenged for sufficiency of evidence using the *Sophophone* standard unless Easterwood had raised the issue on direct appeal or made either of the two showings of the exceptions set forth in *Teague*. This analysis would justify a refusal to apply *Sophophone* retroactively. However, *Neer* did not contain a discussion of the difference between procedural rules and substantive decisions in the arena of collateral attacks.

We have discussed in detail the claims Easterwood has made and the ramifications thereof. We must also consider the State's arguments, although its response to Easterwood's *Bousley* argument was limited to "don't consider it for it was not raised to the trial court."

The most convincing argument that is made for the State's contentions was highlighted by attorney James Foster's testimony at the K.S.A. 60-1507 hearing, which we have previously set forth in detail. There was a great risk of the applicability of felony murder

to the facts of the case, which would have been the centerpiece of the trial and appeal. The parties clearly knew about *Hoang*. And, it undoubtedly appeared likely that, on appeal; the same majority which had found those facts to constitute felony murder in *Hoang*, would likewise find Easterwood's actions to have been the proximate cause of the death of Birch.

Easterwood ultimately was unwilling to gamble on the outcome of a jury trial, a sentencing before a judge who would not have been impressed with his alleged statement about killing all of the witnesses, and the additional challenge of obtaining a favorable result from an appellate court. Easterwood took the safer, more conservative approach and entered into a plea agreement, a contract between himself and the State, whereby he received the dismissal of five counts of kidnapping as well as all other criminal charges pending against him or that could be filed.

Easterwood clearly knew the sentencing judge did not have to follow the recommendation as to the sentencing, but we now know that such agreement was followed and became the sentence in this case.

Arguments that a plea agreement is violated most often come before us on a defendant's claim that the State failed to live up to its obligations as to the sentence recommendations. See, *e.g., State v. Willis*, 244 Kan. 62, 64-70, 765 P.2d 1114 (1988). The *Willis* opinion cites cases which state that "a plea agreement is, in law, just another contract" and that the parties are free to contract subject to the same legal principles that apply in a commercial law setting but once the defendant enters into a plea of guilty, due process mandates the State perform as it promised. 244 Kan. at 67-68. The plea agreement was fully followed. The State performed exactly as it promised. Easterwood received the exact sentence he expected.

It is troubling to believe the result in this case should turn on whether Easterwood pled guilty to a nonexistent crime as he now contends. At the time of his plea agreement, his competent counsel clearly told him felony murder might or might not fit the facts of his case. This was the precise issue he chose to waive, to ignore, or whatever one might call his action, in order to obtain what he

believed to be a favorable plea agreement. This appears to be consistent with *North Carolina v. Alford*, 400 U.S. 25, 38, 27 L. Ed. 2d 162, 91 S. Ct.·160 (1970), where the United States Supreme Court ruled that it was constitutionally permissible to accept a guilty plea from a defendant who claimed to be innocent if there was a "strong factual basis for the plea." See, Barbara, Kansas Criminal Law § 9.18 (1997).

In *State v. Reed*, 254 Kan. 52, 865 P.2d 191 (1993), after probation was revoked, the defendant contended the court lacked jurisdiction to accept her plea because she was illegally charged under the general·theft statute, K.S.A. 21-3701, instead of the welfare fraud statute, K.S.A. 39-720. In rejecting this contention, we stated:

"Reed was represented by counsel. She understood the nature of the charges, the effect of the guilty plea, and the sentence that could be imposed. The fact that the evidence does not support the charge to which the defendant pled guilty does not require that the plea later be vacated." 254 Kan. at 59.

The *Reed* decision was not cited by the Court of Appeals in *Spencer v. State*, 24 Kan. App. 2d 125, 942 P.2d 646 (1997), *aff'd on other grounds* 264 Kan. 4, 954 P.2d 1088 (1998), where it was held that a party may plead guilty to a nonexistence crime if knowingly doing so in order to obtain a beneficial plea agreement. The Court of Appeals' *Spencer* opinion further held that if a defendant enters into a plea agreement voluntarily and intelligently, he or she forfeits the right to attack the underlying infirmity in the charge to which he or she pled. 24 Kan. App. 2d at 129. Easterwood argues in his reply brief that the complaint against him failed to allege an essential element of felony murder.

The New York and Delaware cases relied upon by the Court of Appeals in *Spencer* appear to support its opinion, although there are also arguments that such a plea is jurisdictionally defective. We did not consider the issue when we granted Spencer's petition for review, as we found that the crime the Court of Appeals had deemed to be nonexistent did in fact exist and affirmed on that basis. See 264 Kan. at 5-6, 8.

Felony murder clearly existed when Easterwood pled. A death had occurred during a covered felony. Easterwood was a primary

actor in the aggravated robbery and kidnapping, which was necessary to invoke the felony-murder doctrine. He admitted in his plea colloquy that he was guilty. He asked the court to accept the plea agreement. He failed to appeal or challenge the court's acceptance of his plea. We will not now retroactively decide that his plea is void because of a later favorable ruling on the precise issue he voluntarily declined to challenge.

We hold that *Sophophone* should not be retroactively applied as a matter of public policy under all the facts of this case. Our facts are totally different from *Bousley*, and we hold that *Bousley* does not require relief under K.S.A. 60-1507 to be granted to Easterwood.

Likewise, the holding of *Fiore* is not applicable here because Fiore challenged his conviction at every level and it was only when his codefendant received relief that the finding of a due process violation could be justified. This is not the case under our facts. Further, our *Sophophone* holding was a new decision and rule of law and not a clarification of the plain language of the felony-murder statute. *Fiore* does not require that Easterwood's conviction violate federal constitutional demands.

There clearly was a factual basis for the trial court to accept Easterwood's plea. K.S.A. 22-3210(a)(4) was not violated. Easterwood may not invite error to obtain a favorable plea bargain and subsequently benefit from such an invitation.

The 60-1507 court heard sufficient evidence from attorney Foster's testimony to uphold the trial court's findings that Easterwood was sufficiently advised of the potential penalties that he faced at the time of his plea. The holding of *State v. Solomon*, 257 Kan. 212, 223, 891 P.2d 402 (1995), that "[d]efense counsel has the obligation to advise a defendant as to the range of permissible penalties and to discuss the possible choices available to the defendant" was clearly *not* violated.

The 60-1507 court properly found that Easterwood did not receive ineffective assistance of counsel. The record reflects attorney Foster properly and competently represented Easterwood at all times. Easterwood knowingly decided to take advantage of the favorable plea agreement. He was not coerced or pushed into doing

so. He made the best of what was not a good situation that had every possibility of becoming much worse.

For all the reasons we have discussed, we affirm all of the rulings of the district court and deny the additional contentions made by Easterwood on appeal.

Affirmed.

DAVIS, J., not participating.
BRAZIL, S.J., assigned.