NOT DESIGNATED FOR PUBLICATION

Nos. 116,175
116,176
116,177

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RUDY LEE MARTINEZ,
*Appellant.*

MEMORANDUM OPINION

Appeal from McPherson District Court; JOE DICKINSON, judge. Opinion filed September 8, 2017. Affirmed in part, sentence vacated, and case remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Jamie L. Karasek*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN, J., and BURGESS, S.J.

LEBEN, J.: In early 2016, Rudy Lee Martinez pled no contest to criminal charges in three cases, and he now appeals the 56-month sentence that the district court imposed. He claims that the criminal-history score upon which his presumptive sentence was based was incorrect.

First, he claims that his 2008 Florida burglary conviction was wrongly classified as a person crime. But we can't tell from the documents in our record which subpart of the Florida burglary statute applied to that conviction, leaving us unable to do the

statutory comparison necessary to classify it as a person or nonperson offense. Since Martinez didn't raise this issue until his appeal, the State didn't have a chance to present information to the district court that might support the person-offense classification. So we will remand the case for the district court to look at documents related to the 2008 conviction to determine which subpart of Florida's burglary statute Martinez was convicted under and then classify it based on the comparable Kansas offense.

Second, Martinez claims that his 1996 juvenile adjudication for aggravated assault shouldn't be counted in his criminal history at all. He argues that a statutory amendment about how long old juvenile adjudications should be considered—an amendment that took effect after he committed his crimes—applies retroactively and requires the deletion of this adjudication from his criminal history. But the legislature did not clearly intend for the amendment to apply retroactively, so the juvenile adjudication was correctly accounted for.

As we will explain later in the decision, the possible misclassification of Martinez' 2008 Florida burglary conviction has a potential effect in only one of the three consolidated cases before us on appeal. We therefore vacate the sentence in that single case and remand that case for further consideration of the proper classification of the 2008 Florida burglary conviction. In all other respects, we affirm the district court's judgments in each case.

FACTUAL AND PROCEDURAL BACKGROUND

This case consolidates appeals in three criminal cases against Martinez. He pled no contest in each of them, and in exchange the State dismissed other charges and cases against him. In case No. 15 CR 195, Martinez pled to burglary of a dwelling; in case No. 15 CR 197, felony theft; and in case No. 16 CR 29, attempted felony theft.

2

In April 2016, the district court sentenced Martinez in all three cases. The parties agreed that Martinez' criminal-history score in each case was A (the most serious criminal-history score on a scale of I to A) because he had at least three prior person felonies. See K.S.A. 2016 Supp. 21-6809. Specifically, in case No. 15 CR 195, he had three prior person felonies. In both case No. 15 CR 197 and case No. 16 CR 29, he had four prior person felonies, because the burglary conviction in 15 CR 195 counted for sentencing purposes in those cases. Two of the prior person-felony convictions are relevant to the issues Martinez raises on appeal—a 2008 Florida burglary conviction and a 1996 Kansas juvenile adjudication for aggravated assault.

The district court sentenced Martinez in each case based on the severity level of his crimes and his criminal-history score. Kansas courts determine the sentences for most crimes using a grid created by the intersection of these two factors; each grid box includes a sentencing range of months from which the district court can choose. See, e.g., K.S.A. 2016 Supp. 21-6804. In each of Martinez' cases, the district court imposed the low number from the relevant grid box: 30 months in prison in case No. 15 CR 195; 15 months in case No. 15 CR 197; and 11 months in case No. 16 CR 29. The court ordered that the three sentences would run consecutively, or one after the other, for a total prison sentence of 56 months.

Martinez has appealed his sentences to this court.

ANALYSIS

I. *Martinez' Notices of Appeal Were Timely, So We Have Jurisdiction.*

Before we get to the merits of Martinez' appeal, we must first deal with a novel jurisdictional argument made by the State. It argues that Martinez filed his notices of appeal too late when he relied on the McPherson District Court's celebration of a unique

3

county holiday. Martinez contends that the district court's closure for this McPherson County holiday—All Schools Day—automatically extended his filing deadline, just like state-recognized holidays. We have unlimited review of jurisdictional issues. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

K.S.A. 2016 Supp. 22-3608(c) provides a 14-day deadline for criminal defendants to file the notice of appeal after an adverse decision. Filing a timely notice of appeal is a jurisdictional requirement: if the defendant doesn't appeal within the statutory 14 days, we must dismiss the appeal. *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014).

Specific rules govern how to count these 14 days. For those, we turn to the Kansas Rules of Civil Procedure, which apply in criminal appeals when the Code of Criminal Procedure doesn't address the question. See K.S.A. 22-3606. The day-counting begins on the day after the triggering event, and we then count every day, including weekends and legal holidays. K.S.A. 2016 Supp. 60-206(a)(1)(A), (B). But when the last day of the time to appeal falls on a weekend or a legal holiday, the time period extends until the end of the next day that *isn't* a weekend or a legal holiday. K.S.A. 2016 Supp. 60-206(a)(1)(C). And "legal holiday" has a specific statutory meaning: it is "any day declared a holiday by the president of the United States, the congress of the United States or the legislature of this state, or *any day observed as a holiday by order of the Kansas supreme court*." (Emphasis added.) K.S.A. 2016 Supp. 60-206(a)(6).

In this case, the district court sentenced Martinez on Friday, April 29, 2016. Martinez' lawyer filed the notices of appeal 17 days later, on Monday, May 16. Obviously, this was outside the 14-day time period. See K.S.A. 2016 Supp. 22-3608(c). But the final day of the 14-day time period—Friday, May 13—was All Schools Day, a McPherson County holiday that has been observed there on the second Friday in May since 1914. (The holiday is apparently unique to McPherson County, and celebrates the

4

graduation of students from eighth grade, high school, and college. See www.allschoolsday.com.)

So our jurisdiction depends on whether All Schools Day is a "legal holiday" for the purpose of extending the time period to file the notice of appeal. If so, Martinez' appeal was timely filed on the Monday following All Schools Day. If not, we have no jurisdiction over his appeal.

The parties agree that All Schools Day isn't a holiday declared by the federal government or the Kansas Legislature. But Martinez contends it was a "day observed as a holiday by order of the Kansas supreme court." See K.S.A. 2016 Supp. 60-206(a)(6).

The Kansas Supreme Court issued an administrative order listing the 2016 holidays, including days such as New Year's Day, Columbus Day, and Thanksgiving Day. Unsurprisingly, All Schools Day wasn't on this statewide list. But the order said that district courts could substitute their local holidays for those listed in the order:

> "At the discretion of the chief judge and approval of the judicial administrator, a district court may remain open on any of the above designated holidays when the local county courthouse is open for business and observe as a substitute holiday a county designated holiday not otherwise observed by the Judicial Branch." Kansas Supreme Court Administrative Order No. 281 (issued May 26, 2015).

McPherson County did exactly what the order authorized. There's no suggestion in the record on appeal that the county lacked the required permissions. McPherson County—and the McPherson County District Court—observed All Schools Day instead of Columbus Day, closing the courthouse on All Schools Day (and presumably remaining open on Columbus Day).

The State argues that the holidays listed expressly in the administrative order—New Year's Day, Columbus Day, etc.—are the *only* holidays "observed as a holiday by order of the Kansas supreme court." By this reasoning, since All Schools Day isn't listed in the order, it's not a legal holiday that extends the time to appeal. See K.S.A. 2016 Supp. 60-260(a)(6). But the State's argument ignores the other language in the order that expressly provides for substitute local holidays: a county may "observe as a substitute holiday a county designated holiday not otherwise observed by the Judicial Branch." Administrative Order No. 281. The order provides for substitute county holidays, so the McPherson County holiday of All Schools Day is a "legal holiday" that is "observed as a holiday by order of the Kansas supreme court." K.S.A. 2016 Supp. 60-206(a)(6).

To hold otherwise would be unreasonable, especially considering that the result of the State's argument could be the dismissal of Martinez' appeal. (We say "could be" because the parties have several alternative arguments that we need not address since All Schools Day qualifies as a legal holiday.) McPherson County adopted a resolution setting the schedule of holidays for the local judicial district and then consistent with that resolution, the district court closed the local courthouse on All Schools Day. And the Kansas Supreme Court's Administrative Order No. 281 expressly authorized this.

It would not be fair to allow a county to substitute a local holiday in this way and to hold at the same time that such a substitute holiday isn't a "legal holiday" that extends the time to file an appeal by a few days. When the county courthouse closes for a holiday, the public has good reason to believe that any rules applicable to court filings on legal holidays are in effect.

In sum, All Schools Day was a substitute county holiday authorized by order of the Kansas Supreme Court, so it was a "legal holiday" that extended the 14-day time period for Martinez' notices of appeal to Monday, May 16, 2016. The notices were timely filed on that date, and we have jurisdiction.

6

II. *We Cannot Determine Whether the District Court Correctly Classified Martinez' 2008 Florida Burglary Conviction as a Person Crime, So We Remand this Issue to the District Court.*

Martinez argues that his 2008 Florida burglary conviction should not count as a person offense in his criminal history. We have unlimited review, with no required deference to the district court's conclusion, over the classification of a prior conviction. *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 5, 350 P.3d 1054 (2015) (*Dickey I*).

As an initial matter, the State claims that Martinez cannot challenge the classification of his prior convictions because he invited the error when he failed to object to the classification of his prior convictions and agreed with the district court, on several occasions, that his criminal-history score was correct. The State acknowledges that the Kansas Supreme Court rejected this argument in *State v. Dickey*, 301 Kan. 1018, 1032-34, 350 P.3d 1054 (2015) (*Dickey I*). Relying on K.S.A. 22-3504, which states that an illegal sentence can be corrected at any time, the *Dickey I* court held that a defendant who stipulates or fails to object to the classification of a prior conviction in his or her criminal-history score can still challenge that classification for the first time on appeal. 301 Kan at 1032

The State nonetheless argues that *Dickey I* was wrongly decided. Even if that were so, we are not the court the State should look to for relief; we must abide by the decisions of the Kansas Supreme Court unless it indicates that it is departing from its previous holdings. *State v. Vrabel*, 301 Kan. 797, 809-10, 347 P.3d 201 (2015). And rather than departing from this holding, the court reaffirmed it in a later case involving the same defendant, *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016) (*Dickey II*), and has refused to apply the invited-error doctrine in other cases involving claims of illegal sentences and misclassification of prior convictions. See, *e.g.*, *State v. Rodgriguez*, 305

7

Kan. 1139, 1148-49, 390 P.3d 903 (2017); *State v. Hankins*, 304 Kan. 226, 232, 372 P.3d 1124 (2016).

The State also claims that this case is factually distinguishable from *Dickey I* because Martinez agreed to his criminal-history score six separate times, not just once. This distinction makes no difference here. A defendant can stipulate to the factual existence of a prior conviction but cannot stipulate to the legal classification of that prior conviction. *Dickey II*, 305 Kan. at 220; *Dickey I*, 301 Kan. at 1032. We can correct an illegal sentence at any time, and "where there has been a misclassification of a prior conviction, the resulting sentence is illegal." *Dickey II*, 305 Kan. at 220; see K.S.A. 22-3504. We move on, then, to the classification of Martinez' 2008 Florida burglary conviction and why it matters.

Under the Kansas Sentencing Guidelines Act, a district court determines the range of a defendant's prison sentence using a statutory chart that combines the severity of the defendant's crime with the defendant's criminal-history score. See, *e.g.*, K.S.A. 2016 Supp. 21-6804. Criminal-history scores range from I, the least serious, to A, the most serious, and a more serious criminal-history score will result in a longer prison sentence. Because Martinez had three or more prior person felonies—one of which was his 2008 Florida burglary conviction—his criminal-history score was A. See K.S.A. 2016 Supp. 21-6809. But if the district court wrongly classified that prior conviction as a person felony, then Martinez should have had one less person felony in his criminal history, which could reduce his criminal-history score and therefore his sentence. See K.S.A. 2016 Supp. 21-6809 (two prior person felonies leads to a criminal-history score of B). So did the district court err in classifying the Florida burglary conviction as a person crime?

When classifying out-of-state prior convictions, we start with K.S.A. 2016 Supp. 21-6811(e). See *State v. O'Connor*, 299 Kan. 819, 821, 326 P.3d 1064 (2014); *State v. Fahnert*, 54 Kan. App. 2d 45, 47, 396 P.3d 723 (2017); *State v. Buell*, 52 Kan. App. 2d

8

818, 823, 377 P.3d 1174, *rev. granted* 305 Kan. 1253 (2016). But see *Buell*, 52 Kan. App. 2d at 824 (listing Kansas Court of Appeals cases that did not use subsection [e] to classify out-of-state burglary convictions). Two classifications must occur: (1) Is the prior conviction a felony or a misdemeanor?, and (2) Is it a person or nonperson crime? K.S.A. 2016 Supp. 21-6811(e)(2), (3).

In this case, the first question is straightforward—because burglary is a felony in Florida, it is a felony for Kansas criminal-history purposes. See K.S.A. 2016 Supp. 21-6811(e)(2)(A) ("If a crime is a felony in another state, it will be counted as a felony in Kansas."); Fla. Stat. § 810.02(3) (defining Florida second-degree burglary as a felony). The second question is more difficult and is the crux of this case. See *State v. Moore*, 52 Kan. App. 2d 799, 804, 377 P.3d 1162, *rev. granted* 305 Kan. 1256 (2016).

We determine whether an out-of-state prior conviction is a person or a nonperson offense by comparing the prior-conviction statute to the "comparable offense" in effect in Kansas on the date the current crime was committed. K.S.A. 2016 Supp. 21-6811(e)(3). Kansas courts have said that "comparable offense" means what it says: "'the offenses need only be comparable, not identical.'" *State v. Williams*, 299 Kan. 870, 873, 326 P.3d 1070 (2014) (quoting *State v. Vandervort*, 276 Kan. 164, 179, 72 P.3d 925 [2003], *overruled on other grounds by Dickey I*, 301 Kan. at 1032). In other words, a comparable crime "must be 'similar in nature and cover a similar type of criminal conduct.'" *State v. Riolo*, 50 Kan. App. 2d 351, 353, 330 P.3d 1120 (2014) (quoting *State v. Barajas*, 43 Kan. App. 2d 639, 643, 230 P.3d 784 [2010]); see *State v. Buoy*, No. 113,796, 2016 WL 1546422, at *4 (Kan. App.) (unpublished opinion), rev. denied 305 Kan. 1253 (2016). When comparing out-of-state statutes to Kansas statutes, the focus is the statutory elements: "[T]here is no review of the evidence surrounding the out-of-state conviction." *Williams,* 299 Kan. at 875.

9

For prior *burglary* convictions in particular, the key element in the person/nonperson classification is whether the prior-conviction statute includes a "dwelling" element. See K.S.A. 2016 Supp. 21-6811(d); *State v. Cordell*, 302 Kan. 531, 534, 354 P.3d 1202 (2015); *Moore*, 52 Kan. App. 2d at 805. This distinction comes from the justification behind the person/nonperson classification and the definition of "dwelling"—crimes that cause physical or emotional harm to another person are generally person crimes and are weighted more heavily, *State v. Keel*, 302 Kan. 560, 574-75, 357 P.3d 251 (2015), and whether a place is a "dwelling" turns on whether it is used or intended to be used as a place for people to live. K.S.A. 2016 Supp. 21-5111(k). So because a burglary of a dwelling has a greater potential to result in harm to another person, it's a person crime that weighs more heavily in the calculation of a defendant's criminal-history score.

To classify Martinez' 2008 Florida burglary conviction, we begin by comparing the Kansas and Florida burglary statutes, paying particular attention to the "dwelling" element, since that's what elevates nonperson burglary to person burglary. See *Moore*, 52 Kan. App. 2d at 814. Kansas defines burglary as a person crime only if the defendant unlawfully entered or remained within a dwelling with the intent to commit a felony, theft, or sexually motivated crime in that dwelling. See K.S.A. 2016 Supp. 21-5807(c)(1)(A)(i), (B)(i).

At first glance, at least part of the Florida burglary statute looks similar to this kind of Kansas burglary. See *O'Connor*, 299 Kan. at 823 (stating that the comparable Kansas offense for a Florida burglary would be Kansas burglary); *Buell*, 52 Kan. App. 2d at 826 (same). Florida defines second-degree burglary as unlawfully entering or remaining in a dwelling with the intent to commit an offense therein. Fla. Stat. § 810.02(3)(b); see also Fla. Stat. § 810.02(1)(b) (providing the general burglary definition).

10

But on further review, the Florida statute actually lists several different types of second-degree burglary; not all involve a dwelling. See Fla. Stat. § 810.02(3)(a)-(f). And of critical significance to this appeal, we cannot determine of which of these types of second-degree burglary Martinez was convicted.

Martinez says in his brief on appeal (without explanation) that it appears that he was convicted under subpart (b). And both parties proceed as if that is the only relevant subpart. Indeed, it is the subpart that fits nicely into the sentencing issues that Kansas appellate courts have been grappling with since the Kansas Supreme Court issued its opinion in *Dickey I*, which dealt with the constitutional implications of the person/nonperson classification of a prior Kansas burglary conviction. But a review of the constitutional principles at play in *Dickey I* makes clear that we cannot actually decide this case on the record before us.

In *Apprendi v. New Jersey*, the United States Supreme Court held that because of the Sixth Amendment right to a jury trial, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Under this rule, a court still can use prior convictions to calculate a defendant's criminal-history score, and that score may increase a defendant's sentence. But the court can't increase a defendant's sentence based on anything except those prior convictions. For example, the Kansas Supreme Court applied *Apprendi* to hold that judicially determined upward-departure sentences—increasing the maximum sentence that a defendant could receive based on aggravating facts found by the judge—were unconstitutional. *State v. Gould*, 271 Kan. 394, Syl. ¶¶ 2-6, 23 P.3d 801 (2001).

In short, *Apprendi* forbids a judge from making the factual findings that would increase a defendant's sentence; a jury must determine such facts. So *Apprendi* issues can

11

arise when a sentencing judge looks beyond the mere existence of a prior conviction to classify that conviction in a way that will increase a defendant's sentence. For example, when a Kansas district court classifies an out-of-state prior conviction as a person crime, the defendant will have a more serious criminal-history score and therefore a longer sentence. So the court's person classification cannot be based on any underlying fact about the prior conviction—it must be based only on statutory elements.

Those principles determined the result in *Dickey I*. There, the district court had classified the defendant's 1992 Kansas juvenile adjudication for burglary as a person felony. As we've mentioned, prior burglary convictions are classified as person or nonperson offenses based on whether the prior conviction involved burglary of a dwelling (because that location has more potential for harm to a person). K.S.A. 2016 Supp. 21-6811(d). But the 1992 Kansas burglary statute didn't include a dwelling element. *Dickey I*, 301 Kan. at 1039. So the sentencing court would have had to look at the facts underlying the 1992 conviction, determine that it involved a dwelling, and then use that fact to classify the conviction as a person felony and increase the defendant's sentence. This is exactly the type of "judicial factfinding that goes beyond merely finding the existence of a prior conviction or the statutory elements constituting that prior conviction" that *Apprendi* prohibits. So the *Dickey I* court concluded that "classifying Dickey's prior burglary adjudication as a person felony violate[d] his constitutional rights." 301 Kan. at 1021.

The *Dickey I* court borrowed some analysis and methodology from the United States Supreme Court case *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 2282, 186 L. Ed. 2d 438 (2013). *Descamps* considered how a federal court should classify prior convictions when increasing a defendant's sentence under a provision of the federal Armed Career Criminal Act. That Act prescribes a sentence increase for any felon who possesses a firearm and has three prior convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. §§ 922(g), 924(e) (2012). To classify a prior conviction

12

as a "violent felony" or a "serious drug offense" without doing unconstitutional fact-finding, federal sentencing courts use what the Court has called the categorical and modified-categorical approaches: Both are ways to compare the elements of the prior-conviction statute with elements of generic offenses ("violent felony" and "serious drug offense") without looking into the facts underlying the prior conviction. *Descamps*, 133 S. Ct. at 2281.

The Kansas Supreme Court described these two approaches in *Dickey I*, noting that they provided a constitutionally valid way to classify a prior burglary conviction as a person or nonperson crime—a classification that involves comparing the prior-conviction statute to the Kansas statute in effect at the time the current crime was committed. 301 Kan. at 1038-39; see *Keel*, 302 Kan. 560, Syl. ¶ 8. Under the categorical approach, the court simply compares the elements of the two statutes—it's a pure statutory comparison. The court uses the modified-categorical approach when the prior-conviction statute is divisible—in other words, when the statute provides different ways of committing the crime. Under the modified-categorical approach, the court can look at a limited set of documents (like charging documents, jury instructions, and verdict forms) to determine which of the alternatives the defendant was actually convicted of. The modified-categorical approach lets the court look at a few underlying facts from the prior conviction, but only to determine which part of the prior-conviction statute it should compare to the other offense. *Dickey I,* 301 Kan. at 1037; see *Descamps*, 133 S. Ct. at 2281.

Consideration of the categorical and modified-categorical approaches highlights the problem in this case. As we've stated, Kansas classifies prior out-of-state convictions as person or nonperson crimes by comparing the out-of-state statute to the comparable Kansas statute in effect at the time of the defendant's current crime. K.S.A. 2016 Supp. 21-6811(e). To make this comparison, we need to know which Florida statute Martinez was convicted under. See, *e.g.*, *Buell*, 52 Kan. App. 2d at 826 (stating that defendant was

13

convicted under subpart [b] of an earlier version of the Florida statute and then moving on to the statutory comparison).

Here's what we know about Martinez' Florida burglary conviction from the presentence-investigation reports: (1) the conviction arose under a statute numbered "810023"; (2) the person who prepared the presentence investigation report titled the conviction "Burglary of a Dwelling"; and (3) the conviction date was January 10, 2008. The numbers "810023" reasonably correspond to Florida's second-degree burglary statute, found at Fla. Stat. § 810.02(3). But when Martinez committed his crime, sometime in 2007 (we don't know when), that statute (amended effective July 1, 2007) had either four or five subparts, each one describing a different type of burglary based on location and whether another person was present:

> "(a) Dwelling, and there is another person in the dwelling at the time the offender enters or remains;
> "(b) Dwelling, and there is not another person in the dwelling at the time the offender enters or remains;
> "(c) Structure, and there is another person in the structure at the time the offender enters or remains;
> "(d) Conveyance, and there is another person in the conveyance at the time the offender enters or remains;
> "(e) Authorized emergency vehicle." Fla. Stat. § 810.02(3) (as of July 1, 2007; subsection [e] added as of that date).

None of the presentence investigation reports list which of these subparts applied to Martinez. The title of the conviction as "Burglary of a Dwelling" doesn't provide enough additional guidance because both subparts (a) and (b) involve a "dwelling" element. Fla. Stat. § 810.02(3)(a), (b) (2007). (For comparison, the next line down on each of Martinez' presentence investigation reports lists another Florida burglary conviction, "Burglary of a Structure," saying it arose under "810024A." This corresponds

14

precisely with Florida's third-degree burglary provision for burglary of a structure without another person present, at Fla. Stat. § 810.02[4][a] [2007].) And finally, we don't even know if subpart (e) was an option. The legislature added subpart (e) effective July 1, 2007; because we don't know when in 2007 Martinez committed this burglary, we don't know whether this subpart could apply to this conviction. 2007 Fla. Laws, ch. 2007-115, § 1.

Which subpart applied to Martinez is important because the different subparts are comparable to different Kansas crimes that have different person/nonperson classifications. Under subparts (a), (c), and (d), Martinez' conviction would be a person crime because those subparts all involve the presence of another person, and the comparable Kansas crime would be aggravated burglary, which is always a person crime, regardless of where it occurred. See K.S.A. 2016 Supp. 21-5807(b), (c)(2). On the other hand, if subpart (e) was in effect when Martinez committed his crime and was the subpart he was convicted under, it would compare to regular Kansas burglary and would result in a nonperson classification under the rule announced in *Dickey I* because it doesn't include a dwelling element. Subpart (b) also compares to regular Kansas burglary, but it could be a person crime because it involves burglary of a dwelling—and the dwelling element is what distinguishes person burglary from nonperson burglary in Kansas. And this is where the parties focus their briefs, arguing about whether Florida's definition of dwelling is comparable to Kansas' definition of dwelling.

Kansas defines "dwelling" as "a building or portion thereof, a tent, a vehicle or other enclosed space *which is used or intended for use as a human habitation, home or residence*." (Emphasis added.) K.S.A. 2016 Supp. 21-5111(k). The italicized language is the key part of this definition because it focuses on the possibility that another person could be present in the location of the burglary (thereby increasing the possibility that a person could be harmed, which is why burglary of a dwelling is a person crime). See *State v. Sodders*, No. 115,366, 2017 WL 462046, at *4 (Kan. App. 2017) (unpublished

15

opinion), *petition for rev. filed* March 3, 2017. Florida defines "dwelling" similarly, as a "building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and *is designed to be occupied by people lodging therein at night*, together with the curtilage thereof." (Emphasis added.) Fla. Stat. § 810.011(2). As in the Kansas definition, the focus of this definition is the possibility that another person will be present at the location of the burglary.

Martinez argues that the Florida definition of "dwelling" is broader than and not comparable to the Kansas definition of "dwelling" because it includes the "curtilage" of the dwelling. Generally speaking, "curtilage" means the land around a residence. See *State v. Fisher*, 283 Kan. 272, 282, 154 P.3d 455 (2007); Black's Law Dictionary 466 (10th ed. 2014). But the inclusion of the curtilage of a dwelling doesn't change the essential similarity between the two definitions: both focus on enclosed spaces designed for people to live or stay overnight in. This difference between these definitions is much smaller, for example, than the difference between Missouri's "habitable structure" and Kansas' "dwelling," which Kansas appellate courts have held to be not comparable because "habitable structure" includes a broad range of structures that aren't dwellings meant for human habitation or overnight shelter, including businesses and churches. See *Fahnert*, 54 Kan App. 2d at 56-57. But see *Sodders*, 2017 WL 462046, at *5 (reaching the opposite result).

An aspect of Florida law supports this analysis. As the State points out, Florida courts have interpreted the "curtilage" language in the definition of "dwelling" in a very limited way. First, curtilage only includes land around a building if that land is enclosed in some way (for example, by a fence). *Dubose v. State*, 210 So. 3d 641, 653-54 (Fla. 2017) (citing *State v. Hamilton*, 660 So. 2d 1038, 1044 [Fla. 1995].). Second, Florida courts have avoided conflating burglary with simple trespassing on someone's property. For example, one Florida appellate court determined that a defendant who had stolen

16

property that had been leaning up against a house but had not entered the house was guilty only of trespassing, not of burglary. *J.L. v. State*, 57 So. 3d 924 (Fla. Dist. Ct. App. 2011). Another held that an unattached garage located at the south end of the victim's property was not a part of the residence's curtilage. *Martinez v. State*, 700 So. 2d 142-43 (Fla. Dist. Ct. App. 1997). So Florida has limited the part of its "dwelling" definition that is broader than Kansas' definition; the two definitions need not be identical to be comparable.

Boiling this all down, though, we can't determine whether the Florida and Kansas "dwelling" definitions are comparable—we cannot do the necessary statutory comparison without knowing which subpart of the Florida statute formed the basis of Martinez' conviction. For example, let's first take the person who completed Martinez' presentence investigation reports at his or her word and assume that the burglary involved a dwelling, based on the description of the conviction as "Burglary of a Dwelling." This burglary conviction could be a person crime for two different reasons. If based on subpart (b), then it's a person crime only if the dwelling elements are comparable. But if based on subpart (a), which includes the presence of a person, then the comparable Kansas crime is aggravated burglary, which is always a person crime (with no dwelling analysis required).

Since the person who completed Martinez' presentence investigation report did not actually list the subpart of the Florida statute that applied to Martinez, we hesitate to rest entirely on his or her conclusion that the burglary involved a dwelling. By contrast, the presentence investigator *did* include reference to a statutory subpart for the next conviction listed in the report, another Florida burglary conviction (under a different statute). Why wasn't a subpart included for the Florida burglary conviction Martinez challenges in this appeal? We simply don't know.

17

In this situation, the proper course is to remand the case to the district court for it to use the modified-categorical approach outlined in *Dickey I* to determine which subpart of the divisible Florida statute, Fla. Stat. § 810.02(3), applied to Martinez. See *Mathis v. United States*, 579 U.S. ___, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016) (noting that a divisible statute is one that lists elements in the alternative and defines multiple crimes); *State v. Smith*, No. 113,297, 2016 WL 1391767, at *9 (Kan. App.) (unpublished opinion) (remanding for district court to use modified-categorical approach to determine which part of divisible Texas burglary statute had applied to prior conviction), *rev. denied* 305 Kan. 1257 (2016). We emphasize that the goal of the modified-categorical approach to classifying prior convictions—looking at charging documents, plea agreements, jury instructions, verdict forms, transcripts from plea colloquies, and findings of fact and conclusions of law from a bench trial—is to determine which statutory provision Martinez was convicted under, not to determine the actual facts underlying Martinez' conviction.

If Martinez' conviction was based on subparts (a), (c), or (d), the classification is straightforward—all involve the presence of another person, so all would be comparable to Kansas aggravated burglary and would result in a person classification without any chance of unconstitutional fact-finding. See K.S.A. 2016 Supp. 21-5807(b), (c)(2); *State v. Collier*, 306 Kan. 521, 527, 394 P.3d 1164 (2017) (concluding that *Dickey I* doesn't apply to prior convictions that are comparable to aggravated burglary).

If his conviction was based on subpart (b), then the district court must determine whether the Florida dwelling element is comparable to ours. See *State v. Lewis*, No. 113,438, 2016 WL 1546133, at *5 (Kan. App. 2016) (unpublished opinion) (agreeing that Texas "habitation" fit within Kansas "dwelling" but remanding for district court to look at documents from Texas conviction to determine whether the presentence investigation report correctly described the Texas conviction as "burglary of a habitation"), rev. denied 305 Kan. 1256 (2017); *State v. Barnes*, No. 114,540, 2016 WL 7178303, at *3 (Kan.

18

App. 2016) (unpublished opinion) (remanding for district court to make appropriate findings utilizing *Dickey I* to make sure prior Texas conviction was correctly scored on the presentence investigation report).

Finally, if his crime was committed after July 1, 2007, and was based on subpart (e), then it must be classified as nonperson, since subpart (e) doesn't include a dwelling element. See *Dickey I*, 301 Kan. at 1039.

We note—and defense counsel agreed at oral argument—that this error has a potential impact only on Martinez' sentence in case No. 15 CR 195, the first of the three cases in which he was sentenced. That's because Martinez' conviction in case No. 15 CR 195 was itself for a person-felony offense, burglary, and that conviction counts for his criminal-history score in the other two cases. See K.S.A. 2016 Supp. 21-6810(a); *State v. Jefferson*, No. 116,268, 2017 WL 3113038, at *1 (Kan. App. 2017) (unpublished opinion). Thus, assuming that this is the only error we find in this appeal (a conclusion we will confirm in the next section), further action by the district court is needed only in case No. 15 CR 195.

Because we cannot tell whether the district court correctly classified the 2008 Florida burglary conviction as a person crime, we vacate the defendant's sentence in case No. 15 CR 195 and remand that case for resentencing, at which the district court shall use the modified-categorical approach to determine which subpart of the Florida burglary statute Martinez was convicted under.

III. *The 2016 Amendments to K.S.A. 21-6810(d) Do Not Apply Retroactively, So the District Court Correctly Counted Martinez' 1996 Juvenile Adjudication as a Person Felony.*

Martinez next argues that his 1996 juvenile adjudication for aggravated assault should not be included in his criminal history. He claims that a July 1, 2016 statutory

amendment changed the rules about how to classify prior juvenile adjudications and that the amendment applies retroactively to his cases. The interpretation of a statute is a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

To put his argument in context, let's first review the statutory provisions that govern how to classify juvenile adjudications—subsections (d)(3) and (d)(4) of K.S.A. 21-6810—including how those provisions have been amended in recent years. The specific classification issue in this case is about the "decay" of juvenile adjudications. A juvenile adjudication that "decays" does not count as a prior conviction in a defendant's criminal history. K.S.A. 2016 Supp. 21-6803(e); K.S.A. 2016 Supp. 21-6810(d)(4); *State v. Smith*, 49 Kan. App. 2d 88, 90, 304 P.3d 359 (2013). Subsection (d)(3) explains which types of prior convictions *will not* decay, while subsection (d)(4) explains which ones *will* decay. See K.S.A. 2016 Supp. 21-6810(d)(3), (4).

Martinez committed the crimes in his cases on appeal in May 2015, August 2015, and January 2016. As of 2015, K.S.A. 2015 Supp. 21-6810(d)(3)(B) provided that any prior juvenile adjudication for a crime that would have been a person felony if committed by an adult would *not* decay.

With an effective date of July 1, 2016, the legislature amended these subsections so that some less serious juvenile adjudications that would have been person felonies if committed by adults *will* decay. L. 2016, ch. 97, § 1. Kansas criminal statutes assign severity levels to felonies; the most serious is 1, and the least serious is 10. See, *e.g.*, K.S.A. 2016 Supp. 5807(c) (listing severity levels for different types of burglary). Under the 2016 amendments, prior juvenile adjudications for more serious felonies—those that would have been nondrug person felonies with a severity level of 1 through 4—still do not decay, just like under the 2015 version. K.S.A. 2016 Supp. 21-6810(d)(3)(B). But if the prior juvenile adjudication was for a less serious felony—one that would have been a

nondrug crime with a severity level of 5 through 10—it *will* decay. K.S.A. 2016 Supp. 21-6810(d)(4)(B).

The prior juvenile adjudication at issue here was for a 1996 aggravated assault. If committed by an adult, aggravated assault is a severity-level-7 person felony. See K.S.A. 2016 Supp. 21-5412(e). (It was also a severity-level-7 felony in 1994, when Martinez was charged with it. See K.S.A. 1994 Supp. 21-3410.) The parties agree that if the 2015 statute applies, the adjudication does not decay, because it's a prior juvenile adjudication for a crime that would have been a person felony if committed by an adult. They also agree that if the 2016 version applies, then the adjudication *does* decay, because it's a less serious, severity-level-7 person felony. So which version applies?

Usually, the statute in effect at the time of a person's crime controls. *State v. Bailey*, 306 Kan. 393, 396, 394 P.3d 831 (2017). Martinez committed all of the crimes at issue in these appeals in 2015 or January 2016, all before the effective date of the 2016 statutory amendments. So the 2015 version of the statute, which became effective April 2, 2015, applied to all three of his cases. See L. 2015, Ch. 5, § 5. But Martinez argues that even though the 2016 amendments didn't become effective until July 1, 2016—after he committed his crimes, pled no contest, and was sentenced—the legislature intended them to apply retroactively. See L. 2016, ch. 97, § 6.

Generally, substantive criminal statutes only apply to crimes and circumstances that arise *after* they become law, or prospectively. It's possible for substantive statutes to apply retroactively, to cases and events in the past, but only if the legislature clearly intended them to (and applying them retroactively causes no constitutional problems). *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016).

The statute we're discussing in this case does include retroactivity language: the legislature added subsection (e) in 2015 as part of House Bill 2053, which primarily

21

amended part of the statute about how to classify certain older, pre-1993 convictions. L. 2015, ch. 5, § 1. The added retroactivity language makes the 2015 amendments themselves retroactive: "The amendments made to this section *by this act* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) K.S.A. 2015 Supp. 21-6810(e); L. 2015, ch. 5, § 1. The legislature had specific reasons to make the 2015 amendments retroactive; the amendments were the legislative response to a specific Kansas Supreme Court decision, *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), enacted before *Murdock* was overruled in *State v. Keel*, 302 Kan. 560, Syl. ¶ 9, 357 P.3d 251 (2015). See *State v. Villa*, No. 115,595, 2017 WL 3207087, at *3-4 (Kan. App., 2017) (unpublished opinion). In 2016, when the legislature made the amendments about the decay of juvenile adjudications in House Bill 2463, it didn't amend subsection (e). See K.S.A. 2016 Supp. 21-6810(e); L. 2016, ch. 97, § 1.

Martinez argues that because K.S.A. 2016 Supp. 21-6810 includes retroactivity language, the 2016 amendments apply retroactively to his cases. But he overlooks the actual words in the retroactivity provision: the amendments made "by this act" are retroactive. K.S.A. 2015 Supp. 21-6810(e). The "act" referenced here is House Bill 2053, which contained the 2015 amendments and was titled, "An act concerning crimes, punishment and criminal procedure; relating to calculation of criminal history; amending K.S.A. 2014 Supp. 21-6810 and 21-6811 and repealing the existing sections." L. 2015, ch. 5. If the legislature had intended for subsection (e) to apply to all future amendments to the statute, it could have stated that intent; the legislature frequently applies a rule to a statute "and amendments thereto."

In other words, only the 2015 amendments are retroactive, not every later amendment to the statute. It's true that the legislature didn't change subsection (e) in 2016 when it made more amendments. But we hesitate to interpret the legislature's lack of action related to subsection (e) as clear intent to make the 2016 amendments apply retroactively. See *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016) (noting that

22

legislative inaction is not a strong indicator of legislative intent); *Bernhardt*, 304 Kan. at 479 (reciting rule that a statute only applies retroactively if the legislature clearly intended it to). Additionally, the legislature's most recent amendment to subsection (e) confirms our interpretation of "by this act" to mean that only the 2015 amendments were meant to be retroactive. Effective July 1, 2017, subsection (e) now reads: "The amendments made to this section by *section 1 of chapter 5 of the 2015 Session Laws of Kansas* are procedural in nature and shall be construed and applied retroactively." (Emphasis added.) H.B. 2092; L. 2017, ch. 92, § 5. We find no clear indication that the legislature intended for the 2016 amendments to apply retroactively, so we apply the presumptive rule that substantive changes apply prospectively only.

Indeed, Martinez concedes that the amendments in this case are substantive—they aren't procedural amendments that can apply retroactively even without clear legislative intent. See *Bernhardt*, 304 Kan. at 479. Substantive laws declare what acts are crimes and prescribes the punishment for those acts, while procedural laws regulate the steps for trial, conviction, and sentencing. See *State v. Dupree*, 304 Kan. 43, 54, 371 P.3d 862 (2016) (finding speedy-trial statute procedural); *Easterwood v. State*, 273 Kan. 361, 372, 44 P.3d 1209 (2002) (defining procedural and substantive). The amendments here are substantive because they affect the length of defendants' sentences. *State v. Reese*, 300 Kan. 650, 653-54, 333 P.3d 149 (2014); *State v. Martin*, 270 Kan. 603, 608-09, 17 P.3d 344 (2001). Finding for Martinez would definitely affect his substantive rights, as well as the rights of every defendant serving a sentence based in part on the classification of a juvenile adjudication like Martinez'—one that would be a low-severity-level person felony if committed by an adult. See *Parker v. State*, No. 115,267, 2017 WL 947821, at *4 (Kan. App. 2017) (unpublished opinion) (noting potential for a flood of illegal-sentences cases if the 2016 amendments apply retroactively), *petition for rev. filed* May 4, 2017.

The 2016 amendments do not apply retroactively, so Martinez' prior juvenile adjudication for aggravated assault does not decay and was correctly classified as a person felony in his criminal history. See *Villa*, 2017 WL 3207087, at *2-5 (reaching the same result and reviewing effect of subsection [e]); *Parker*, 2017 WL 947821, at *4 (reaching the same result, albeit without discussing subsection [e]); accord *State v. Riley*, No. 116,046, 2017 WL 1426208, at *1 (Kan. App. 2017) (unpublished opinion) (following *Parker* without analysis).

We vacate the defendant's sentence in case No. 15 CR 195 and remand to the district court for resentencing. In all other respects, we affirm the district court's judgment.