THE STATE OF KANSAS v. R. M. YOUNG.

1. MURDER—*Intention to Kill.* An intention to kill is an essential element of murder in the second degree in this state, and where it is not alleged or proven that the killing was purposely done, a conviction for murder in the second degree must be set aside.

2. COMMON-LAW OFFENSES—*Statutory Crimes.* In this state there are no common-law offenses, and there can be no convictions except for such crimes as are defined by statute.

3. ABORTION, *Attempt to Produce*—*Invalid Statute.* Section 15 of the crimes act, which provides that "Every person who shall administer to any woman pregnant with a quick child any medicine, drug, or substance whatsoever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by a physician to be necessary for that purpose, shall be guilty of manslaughter in the second degree," is inoperative and invalid, as it undertakes to establish a degree of felonious homicide where neither the death of the child nor of the mother results from the acts committed, and where there may be no killing or homicide.

4. TESTIMONY—*Instructions.* The testimony in the case examined, and *held* to be sufficient to warrant instructions upon the degrees of homicide provided for in §§ 12 and 27 of the crimes act.

5. STATEMENTS BY DECEASED—*Incompetent Evidence.* Statements by the deceased, made some time before the commission of

the alleged offense, to the effect that the defendant and her husband wanted her to have an abortion produced, but that she had determined to prevent them from accomplishing their purpose, were inadmissible; and statements made to others after the alleged abortion had been produced, and which did not characterize or explain the act, were incompetent and should have been excluded from the jury.

6. ADMISSIONS BY COCONSPIRATOR, *Inadmissable.* Evidence of statements made by one who was charged with being a coconspirator with the defendant in the commission of the offense, but who was granted a separate trial, and where the statements purported to have been made in the absence of the defendant, after the offense had been completed and the alleged conspiracy consummated, was inadmissible.

*Appeal from Cowley District Court.*

AT the September term, 1894, in the district court of Cowley county, *R. M. Young* was prosecuted upon an amended information in which it was alleged:

"That on the — day of May, 1894, at and within the county of Cowley and state of Kansas, one A. R. Wilcox and R. M Young did unlawfully, maliciously, willfully, feloniously, and of their malice aforethought, administer to one Carrie B. Wilcox medicines, drugs and substances, a more particular description of which is unknown to your informant, and did unlawfully, maliciously, willfully, feloniously, and of their malice aforethought, employ at and upon the body of the said Carrie B. Wilcox, a certain instrument, the name and description of which is unknown to your informant, she, the said Carrie B. Wilcox, being then and there a woman, pregnant with a quick child, and with the intent then and there to destroy said child, the same not then and there having been necessary to preserve the life of her, the said Carrie B. Wilcox, and the same not having been advised by a physician to be necessary for that purpose, and by means and in consequence of the administering to the said Carrie B. Wilcox of the said medicines, drugs and substances, and by means and in consequence of the said use and em-

ployment of said instrument by the said A. R. Wilcox and R. M. Young to and upon the person of the said Carrie B. Wilcox, she, the said Carrie B. Wilcox, then and there being greatly wounded and diseased of her body, and from then until the 13th day of May, 1894, did languish, and on the said 13th day of May, 1894, in the county and state aforesaid, she, the said Carrie B. Wilcox, of the mortal wound and disease aforesaid, died; and so the county attorney saith that the said A. R. Wilcox and R. M. Young, in the manner and by the means aforesaid, she, the said Carrie B. Wilcox, did unlawfully, feloniously, maliciously, willfully, and of their malice aforethought, kill and murder.''

A motion to quash the information because of defect in form and insufficiency in the facts stated was made and overruled. Upon the trial objections were made to the admission of testimony and to the instructions to the jury, and after the defendant had been found guilty of murder in the second degree, motions for a new trial and in arrest of judgment were made and overruled. The defendant appeals.

*Pollock & Love,* and *S. R. Peters,* for appellant.

*F. B. Dawes,* attorney general, *S. E. Fink,* county attorney, for The State; *Beekman & Swarts,* of counsel.

The opinion of the court was delivered by

JOHNSTON, J. : It is strongly urged by the appellant that he was tried and convicted for an offense not charged in the information, or, in other words, that the facts averred in the charge are insufficient to constitute murder in the second degree. The jury were instructed that—

'' There was no evidence in this case which tends to show that the defendant is guilty of murder in the first degree, or manslaughter in the first, second, or third

degree.   The court will therefore not submit for your
consideration these degrees of the offense charged.
You may, however, if you deem the evidence sufficient,
convict the defendant of either murder in the second
degree, manslaughter in the fourth degree, or of a
misdemeanor under § 44 of the crimes and punishment
act, as heretofore given to you, or acquit him alto-
gether in case the evidence is insufficient to satisfy
your minds that he is guilty of either one of these de-
grees of the offense charged.''

The attention of the jury was directed to §§ 12 and
14 of the crimes act, each of which describes acts
which constitute manslaughter in the first degree, and
informed them that these sections were inapplicable
to the facts in the case and to the charges made, and
also called attention to § 15 of the crimes act, which
provides as follows :

''Every person who shall administer to any woman
pregnant with a quick child any medicine, drug, or
substance whatsoever, or shall use or employ any in-
strument or other means, with intent thereby to de-
stroy such child, unless the same shall have been
necessary to preserve the life of such mother, or shall
have been advised by a physician to be necessary for
that purpose, shall be guilty of manslaughter in the
second degree.''

In respect to this section the court stated that it was
inoperative, and for that reason it would not be sub-
mitted for the consideration of the jury.   From the
language of the information it would seem that the
pleader had drawn it under § 15, upon the assumption
that it was operative, and that one who committed
the acts there prohibited, being committed in the per-
petration of a felony, and that as the death of the
woman resulted from the perpetration of such felony,
it constituted murder under § 6 of the crimes act.   The
court has, however, as we have seen, advised the

jury that under the testimony there could be no conviction of murder in the first degree or of manslaughter in the first, second, or third degree.

We think that the court rightly held that § 15 is without application or force. It appears to be an attempt to define and establish a degree of felonious homicide where there may be no killing or homicide. The section, supposed to be complete in itself, omits one of the essential elements of homicide, namely, that the death of the child or mother should ensue from the means employed. If the medicine administered or instruments employed on a woman pregnant with a quick child should be used or employed with intent to destroy the child, and when it was not necessary to preserve the life of the mother, or had not been advised by a physician to be necessary for that purpose, and no injury resulted to the mother or to the child, it cannot be possible that the person charged could be convicted of felonious homicide. It was probably not the purpose, nor was it competent, for the legislature to make that a degree of felonious homicide which in truth and in fact is not homicide, and where the acts prohibited and proposed to be punished do not result in death. This section, although it has stood upon the statute-book from the beginning, has never been challenged nor construed. In *The State v. Watson*, 30 Kas. 281, it was held that a person prosecuted under § 15 might be convicted of a misdemeanor under § 44, but the acts charged were sufficient to constitute a misdemeanor, and they fairly fell within the terms of § 44. It does not appear that attention was called to the defect in § 15, and under the circumstances there was no necessity to determine whether it authorized a conviction for felonious homicide. The section was

*3. Abortion, attempt to produce— invalid statute.*

23—55 KAS.

apparently taken from the Missouri statute, and the language of both is substantially the same, except that the following words found in the Missouri statute are omitted from ours : "If the death of such child or mother thereof ensue from the means so employed." This section was intended to be complete within itself, and to define a degree of homicide. We cannot extend the statute beyond the natural meaning of the words employed, nor interpolate into it language necessary to create the offense of felonious homicide. As was said in *The State v. Chapman*, 33 Kas. 136, "the omission is one for which the legislature is responsible. It was properly a *casus omissus* which the legislature may, but the court cannot, supply."

The important question for consideration is whether the information warrants a conviction of murder in the second degree. It will be observed that it does not allege an intent to kill or even to injure Carrie B. Wilcox, and also that it does specifically charge that the drugs and medicines were administered and the instruments were employed upon her for the purpose and with the intent to destroy a quick child with which she was pregnant. It will be further noticed that although the information charges the acts to have been done with intent to destroy the life of the child, there is no averment that the child was injured or destroyed. Manifestly there was no purpose to prosecute the defendant for the killing of the child, and it is not charged that there was an intent on his part to kill the deceased. Under our statute the intent to kill is an essential ingredient of murder in the second degree. Section 7 of the crimes act, under which the defendant was convicted of murder in the second degree, reads : "Every murder which shall be committed pur-

1. Murder—intention to kill.

posely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree.'' The preceding section of the statute defines murder in the first degree, and then provides that a killing purposely — that is, with an intent to kill, and maliciously, but without deliberation and premeditation — is murder in the second degree. Ohio has a statute similar to ours, which provides:

"That if any person shall purposely and maliciously, but without deliberation and premeditation, kill another, every such person shall be deemed guilty of murder in the second degree, and on conviction thereof shall be imprisoned in the penitentiary and kept at hard labor during life."

In interpreting this statute, the supreme court of that state held that the intent or purpose to kill, although not essential to constitute murder at common law, was made one of the ingredients of the crime of murder by the statute of Ohio, and that to convict of murder in the second degree the state must allege and prove a purpose or intent to kill. (*Fouts v. The State,* 8 Ohio St. 98; *Robbins v. The State,* 8 id. 131; *Jones v. The State,* 38 N. E. Rep. 79.)

We think this the correct view of the statute, and the manner in which homicides are graduated by the statutes tends to confirm the interpretation. The intent with which the killing is done fixes the degree of the homicide and determines the measure of punishment. In some of the states the statutes, after defining murder in the first degree substantially as ours does, provide that all other murders or killings which would have been murder at the common law shall constitute murder in the second degree. Our statute, however, places a limitation on this classification by providing that every murder other than those of the first degree, committed *purposely* and maliciously, shall

constitute murder in the second degree. This qualification clearly makes the purpose to kill an essential ingredient of murder in the second degree.

It is argued that the facts stated in the information were sufficient to constitute murder at the common law, and portions of the charge given to the jury appear to assume that murder at common law and in this state is one and the same thing, and that an unintentional killing may constitute murder in this state. As some of the authorities cited show, murder in Kansas is materially different from murder by the common law of England. In Kansas there are no common-law offenses, and there can be no

2. Common-law offenses— statutory crimes.

conviction except for such crimes as are defined by statute. The defendant therefore cannot be prosecuted for or convicted of any other than a statutory crime; and the jury should have been so advised. The mere fact that the defendant did not intend to kill the deceased will not necessarily relieve him from punishment for felonious homicide. The testimony tends to prove that he unlawfully produced an abortion upon the deceased. If the act resulted in killing her, and it was not his design to effect death, and it was committed in such a way that it would have been murder at common law, then he may be convicted under § 12 of the crimes act for manslaughter in the first degree. That section provides that—

"The killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of another, while such other is engaged in the perpetration or attempt to perpetrate any crime or misdemeanor, not amounting to a felony, in cases when such killing would be murder at the common law, shall be deemed manslaughter in the first degree."

The testimony in the case appears to be sufficient to have warranted an instruction upon this degree of

homicide, and also under § 27 of the crimes
4. Testimony—
instructions. act, which provides that "every other kill-
ing of a human being by the act, procure-
ment or culpable negligence of another which would
be manslaughter at common law, and which is not ex-
cusable or justifiable, or is not declared in this article
to be manslaughter in some other degree, shall be
deemed manslaughter in the fourth degree." ( *The
State v. Spendlove*, 47 Kas. 160.)

The court rightly submitted § 44 of the crimes act,
which provides that if the defendant purposely pro-
duced an abortion, when it was not necessary to pre-
serve the life of the woman and when no advice by a
physician that it was necessary for that purpose had
been given, he should, upon conviction, be adjudged
guilty of a misdemeanor.

Error is alleged in the reception of testimony over
the objection of the defendant. A witness was per-
mitted to give the statements of the deceased, made
some time before the commission of the alleged of-
fense, to the effect that the defendant and her hus-
band wanted her to have an abortion produced, but
that she had determined to prevent them from ac-
complishing their purpose. This testimony was
clearly inadmissible, and was of a prejudical char-
acter. Testimony of statements made by the de-
ceased some time after the commission of the alleged
offense was erroneously admitted. If the statements
had been made at the time the act was done, or dur-
ing the performance of the operation, they might have
been admitted as part of the *res gestæ*, but
5. Statements
by deceased— statements made to others after the act had
incompetent
evidence. been completed, and which do not charac-
terize or explain the act, are incompetent.
They could not and appeared not to have been re-

ceived as dying declarations, and in no view of the case were they admissible.

Evidence of statements made by Arthur Wilcox, who was a codefendant, and who was charged with being a coconspirator of the defendant, Young, was improperly received. The statements purported to have been made in the absence of the defendant, after the abortion had been produced and the alleged conspiracy consummated. Evidence of declarations made under such circumstances is clearly inadmissible, and it was of such a character as to be prejudicial. ( *The State v. Bogue*, 52 Kas. 79.)

6. Admissions by coconspirator, inadmissible.

For the errors mentioned the judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.