Atcheson, J., dissenting:
The majority today unleashes a bastard beast of plea bargaining that permits a prosecutor and defense lawyer to agree to a crime they make up, then designate as a felony or misdemeanor, and arbitrarily assign a severity level-as long as a district court consents. The beast, effectively a common-law crime, defies legal bounds: It is contrary to the Kansas Criminal Code; it ignores controlling Kansas Supreme Court precedent; and it almost certainly violates the Kansas Constitution's separation of powers between the judicial and legislative branches of government. Ironically, this case could be decided one way or the other without the beast. Given my disagreement with both the result the majority reaches and the misbegotten way it goes about getting to that result, I dissent.
In 2011, Defendant Robert Kenton Pollman Jr. entered into an agreement to plead no contest to "crim[inal] discharge [of a] firearm at [an] unoccupied vehicle." No such offense appeared in the Kansas Criminal Code then and doesn't now. As part of the charade, Pollman's lawyer and the county attorney designated their invented crime as a severity level 8 person felony. For reasons I can't fathom, the Finney County District Court accepted the plea, thereby creating a common-law crime-one that exists by judicial declaration rather than legislative enactment. The district court later sentenced Pollman consistent with the plea agreement, and he has completed that sentence as far as we know.
Six years later, Pollman pleaded no contest to a drug crime (that does appear in the criminal code). And that is the case in front of us. For his only issue on appeal, Pollman has challenged how his 2011 conviction on the common-law offense of shooting at an unoccupied vehicle should be scored for criminal history purposes. And that is the question in front of us. Pollman is not trying to set aside the 2011 conviction. I am not sure he has a procedural vehicle to do so, even if he wanted to. But I am quite sure this case would not be it.
PLEA BARGAINING DOES NOT EXTEND TO COMMON-LAW CRIMES
It seems plain to me that Pollman could not have been and should not have been convicted of a common-law crime in 2011. In short, the district court had no business accepting a plea to an entirely made-up crime. The Kansas Criminal Code explicitly abolishes common-law crimes: "No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state ...." K.S.A. 2016 Supp. 21-5103(a). The prohibition governed Pollman's 2011 case and has been in place for eons. See K.S.A. 21-3102 ; State v. Young , 55 Kan. 349, 356, 40 P. 659 (1895).
*527 The legislative intent couldn't be much clearer. If conduct doesn't correspond to what is described in a section of the criminal code or elsewhere in the statute books, it isn't a crime. The district court violated that statutory directive in accepting Pollman's plea in 2011.
The Kansas Supreme Court has repeatedly recognized that "[t]here are no common law crimes in this state, and there can be no conviction except for such crimes as are defined by statute." State v. Sexton , 232 Kan. 539, Syl. ¶ 1, 657 P.2d 43 (1983) ; see State v. Rodriguez , 305 Kan. 1139, 1154, 390 P.3d 903 (2017) (recognizing rule stated in Sexton ); Young , 55 Kan. at 356, 40 P. 659. That precedent is binding on district courts. So the district court should not have accepted Pollman's plea to a common-law crime in 2011 for that reason.
Finally, the Kansas Constitution allocates authority among the executive, legislative, and judicial branches of government. See State ex rel. Morrison v. Sebelius , 285 Kan. 875, 882-83, 179 P.3d 366 (2008) (recognizing separation of powers doctrine as " 'inherent and integral' " to the fundamental tripartite forms of state and federal government and implicit in the division of authority among the legislative, executive, and judicial branches recognized in Kansas Constitution). With the abolition of common-law crimes, the judicial branch had no authority to proscribe particular conduct as criminal. That authority rests with the Legislature. As the Rodriguez court recently pointed out, "it is the Kansas Legislature that establishes what constitutes a criminal act in Kansas, not the courts." 305 Kan. at 1154, 390 P.3d 903. The concept is neither new nor stunning. See Sexton , 232 Kan. at 542, 657 P.2d 43 ("[A]ll crimes are established by legislative act."). By endorsing the 2011 plea bargain, the district court gave its imprimatur to a common-law crime and, in doing so, exceeded its constitutional authority by usurping a legislative function. See State ex rel. Morrison , 285 Kan. at 898, 179 P.3d 366 ("The separation of powers doctrine, therefore, prohibits either the executive or judicial branches from assuming the role of the legislature.").
To reiterate, the district court should not have accepted Pollman's plea to a common-law crime in 2011 and had an obligation to reject the proposed agreement. If there were some need to invoke a particular rule for the result, it would be this:
Plea agreements are treated as a species of contract. State v. Peterson , 296 Kan. 563, 567, 293 P.3d 730 (2013). The courts should not enforce contracts that are contrary to public policy. Varney Business Services, Inc. v. Pottroff , 275 Kan. 20, Syl. ¶ 1, 59 P.3d 1003 (2002). Public policy may be found in legislative enactments or constitutional doctrines. Petty v. City of El Dorado , 270 Kan. 847, 854, 19 P.3d 167 (2001) (public policy of state resides in "its constitution, its statutory enactments, and its judicial decisions"). The declaration of public policy in criminalizing particular conduct resides with the Legislature, subject to constitutional strictures.[1]
[1]We do not know why the district court accepted the plea in the 2011 case. The transcripts from the plea hearing and sentencing in that case are not in the record on appeal for this case. We have a journal entry of disposition, reflecting the entry of the plea. I presume at some point in the process the district court understood that discharging a firearm at an unoccupied vehicle was not criminalized in a Kansas statute. Whether the district court knew or didn't know, the plea was legally improper.
As I said, the question for us is how the 2011 conviction should be treated for criminal history purposes in this case. To resolve that issue, the majority arguably does not need to endorse the plea agreement and conviction as proper exercises of authority and could simply find that Pollman cannot now disavow the result he sought in that case. As I next explain, I disagree with even that sort of narrow conclusion. But I am more adamantly at odds with the majority's broad-and wholly unjustified-endorsement of plea agreements and convictions for common-law crimes. The beast arises from fallacies in the majority's treatment of plea bargaining and its muddled application of reasoning by analogy, a mainstay of judicial decision-making.
Because plea agreements for and convictions of common-law crimes are impermissible, *528 they should not happen. A published decision to that effect from the Kansas Supreme Court at least in theory should slay the beast and end the practice. See State v. Hall , 298 Kan. 978, 983, 319 P.3d 506 (2014) (Court of Appeals duty bound to follow Supreme Court precedent); State v. Meyer , 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015) (same); State v. Stadler , No. 112,173, 2015 WL 4487059, at *6 (Kan. App. 2015) (unpublished opinion) ("The district court and this court are duty bound to follow Kansas Supreme Court precedent."). Until now, the court has not been called upon to address the precise issue, although the conclusion seems ineluctable for the reasons I have outlined. But precedent and the force of stare decisis create no more than an honor system in this circumstance. If the lawyers for the parties and the district court agree to a disposition of a case based on a plea to a common-law crime, no one has an incentive to complain and, thus, to appeal the result.[2]
[2]We have no particularly reliable gauge as to how common the practice may be. Pollman's 2011 case could be an isolated, and perhaps unique, instance of unwarranted creativity. But plea bargaining to common-law crimes may have been a recurrent phenomenon in some judicial districts or even across the state that has gone largely unnoticed in the absence of any appellate review. With today's published opinion, the practice almost certainly will become more common.
Appellate courts may impose transactional costs on improper practices to disincentivize them. For example, the Kansas Supreme Court requires the party benefiting from an erroneous jury instruction to demonstrate the absence of prejudice to an opposing party who has objected. See Castleberry v. DeBrot , 308 Kan. 791, 809, 424 P.3d 495 (2018). Similarly, the court imposes on the State the burden of proving a prosecutor's impermissible closing argument did not prejudice the defendant. See State v. Sherman , 305 Kan. 88, 109, 378 P.3d 1060 (2016). Plea bargaining for and resulting convictions based on common-law crimes represents another improper practice.
But there is no disincentive to improper plea bargaining that may be reliably imposed in the case in which it occurs precisely because everyone agrees to the impropriety. The appellate courts, therefore, have to exact some other transactional cost. Declining to consider such a conviction for criminal history purposes in a later criminal prosecution creates at least a modest penalty and ought to discourage plea bargains for common-law crimes. The cost, of course, falls on the State rather than the criminal defendant. But there can be no plea agreement without the State's approval. And the prosecution's ultimate duty is to advance a just result-a duty that can't really be squared with signing off on a plea agreement that violates public policy even though the agreement may confer some benefit on the defendant. See State v. Pabst , 268 Kan. 501, 510, 996 P.2d 321 (2000) (prosecutorial duty). The district court's approval of such an agreement-at the behest of the prosecutor and the defendant-neither sanctifies nor sanitizes the result.
For that reason, I conclude Pollman's 2011 conviction should not be scored for criminal history purposes in this case because it derives from an impermissible plea agreement and rests on an unsanctioned common-law crime. I, therefore, would reverse and remand with directions that the district court resentence Pollman in this case using a criminal history category that excludes the 2011 conviction.[3]
[3]The change would be significant for Pollman in this case, and it would be for most defendants if the discarded conviction for a common-law crime had been dubbed a person felony. In this case, the district court placed Pollman in criminal history category C based on one person felony conviction (the 2011 case) and one nonperson felony. Based on the conviction in this case for attempted possession of methamphetamine, Pollman fell in a border box with a presumptive guidelines sentence of 28 to 32 months in prison. A border box effectively calls for presumptive incarceration. See K.S.A. 2016 Supp. 21-6805(d). If the 2011 conviction were discarded, Pollman would have been in criminal history category F based on two nonperson felonies with a guidelines sentence of 16 to 18 months incarceration and a presumption for probation.
*529 MAJORITY ERRS IN RECOGNIZING PLEAS TO COMMON-LAW CRIMES
The majority mistakenly concludes a plea agreement for and conviction of a common-law crime must be legally permissible based on two pyramiding errors. First, the majority misunderstands the scope of the legal fictions tolerated in plea bargaining. Pertinent here, those fictions are limited to convictions for statutorily recognized crimes, consistent with K.S.A. 2016 Supp. 21-5103(a). With statutory crimes, the Legislature proscribes the wrongful conduct, designates the crime as a felony or misdemeanor, and prescribes the presumptive sentence in keeping with the recognized allocation of authority between the legislative and judicial branches. Second, the majority extracts the narrow statement of the holdings in cases affirming pleas to statutory crimes and then, without considering the governing factual circumstances, applies those holdings here to a plea involving a common-law crime-a legally significant and, in my view, controlling difference. That severance of factual predicate from legal holding conflicts with appropriate judicial reasoning by analogy from case precedent to new and different circumstances. Doing so may create false analogies and can easily lead to erroneous outcomes, as has happened here. Finally, however, the majority essentially contradicts its own premise by treating Pollman's 2011 conviction as a nonperson felony more or less in keeping with the statutory framework rather than as a person felony consistent with the parties' and the district court's designation of their invented crime.
Plea Bargaining in Kansas Does Not Contemplate Common-Law Crimes
The criminal justice system depends on plea bargaining as a means of disposing of the vast majority of cases. Without those agreements and the resulting dispositions, the system would collapse from the sheer volume of trials and the time and resources they would consume. Plea bargains typically call for a defendant to plead guilty or no contest in exchange for the State agreeing to a reduction of the charged crimes to less serious crimes, the dismissal of some charged crimes, a recommendation to the district court for less than the maximum sentence, or some combination of those benefits.
Successful plea bargains often depend upon one or more legal fictions to arrive at deals mutually acceptable to the prosecution and the defense and tolerable to district courts. Legal fictions are strange creatures. They populate the law with conventions or understandings that aren't really true but are accepted because they smooth out processes that would otherwise be at least cumbersome and perhaps unworkable. A legal fiction has been defined as "[a]n assumption that something is true even though it may be untrue ... to alter how a legal rule operates." Black's Law Dictionary 1031 (10th ed. 2014).
Plea bargaining regularly relies on three legal fictions. In the first fiction, the prosecutor and the defendant agree to a plea to an amended statutory crime that doesn't particularly fit the facts of what the State contends actually happened but carries a lesser punishment than the original charge. See, e.g., State v. Wieland , No. 114,900, 2017 WL 657999, at *3 (Kan. App.) (unpublished opinion) (defendant pleaded guilty to two counts of attempting to possess child pornography, a form of sexual exploitation of a child violating K.S.A. 2012 Supp. 21-5510 [a][2], when he actually had child pornography on his smartphone), rev. denied 306 Kan. 1331 (2017). The second fiction comes into play when the defendant pleads guilty to a lesser offense that amounts to a legal impossibility-typically an attempt to commit certain statutory crimes. The particular mental intent required for attempts cannot exist simultaneously with the particular mental state or mens rea for some crimes. That conflict prevents a defendant from truly having the state of mind necessary to be guilty of an attempt to commit those crimes, rendering such a charge a "legal impossibility." See, e.g., McPherson v. State , 38 Kan. App. 2d 276, 280, 163 P.3d 1257 (2007) (defendant properly permitted to plead to attempted unintentional second-degree murder even though crime requires mental state that cannot legally exist). Attempts typically are punished less severely than the completed crimes, so the defendant realizes a benefit. See *530 K.S.A. 2018 Supp. 21-5301(c)(1). In the third fiction, a defendant pleads guilty to a statutory crime to accept an advantageous plea bargain while maintaining his or her innocence in what is commonly known as an Alford plea. See State v. Case , 289 Kan. 457, 460-61, 213 P.3d 429 (2009) ; see also North Carolina v. Alford , 400 U.S. 25, 37-38, 91 S. Ct. 160, 27 L.Ed. 2d 162 (1970).
Although those conventions may be legal fictions, the fiction extends only so far. They all involve dispositions resulting in convictions for statutory crimes. In other words, the crime to which the defendant pleads can be found in the Kansas Criminal Code or elsewhere in the statute books. Attempts are codified, as are aiding and abetting and criminal conspiracies. See K.S.A. 2018 Supp. 21-5210 (liability for aiding and abetting another in committing a crime); K.S.A. 2018 Supp. 21-5301 (liability for failed attempt to commit crime); K.S.A. 2018 Supp. 21-5302 (liability for agreement with another person to commit crime coupled with overt act in furtherance of agreement). So the pleas tie directly to what the Legislature has chosen to criminalize. In turn, the Legislature has designated the crimes of conviction as misdemeanors or felonies, their severity level, and their identification as person or nonperson offenses. None of that is supposed to be left to the parties' invention. And all of those classifications matter. The severity level of a felony in combination with the defendant's criminal history category determines the presumptive guidelines sentence for a conviction. A defendant's criminal history, in turn, takes account of past convictions with greater weight given to felonies than misdemeanors and to person offenses over nonperson offenses.
Pollman's 2011 conviction has none of those attributes, since the prosecutor and the defense lawyer invented the crime of discharging a firearm at an unoccupied vehicle. There is no such offense in the Kansas Criminal Code. The lawyers arbitrarily characterized their invention as a felony and with equal arbitrariness and a dose of illogic designated it a severity level 8 person felony. Just how shooting at a vehicle with no occupants ought to be a person felony escapes me. See Kansas Sentencing Guidelines Desk Reference Manual 28 (2018 ed.) ("The 'person' designation generally refers to crimes that inflict, or could inflict harm to another person."). The Legislature, of course, had nothing to say about any of that. Neither the district courts nor the appellate courts ought to sign off on those legislatively unauthorized creations.
The majority pallidly points out that discharging a firearm at an unoccupied vehicle sounds kind of like some actual statutory crimes, such as discharging a firearm at an occupied vehicle-the charge the prosecutor originally filed against Pollman in 2011-or discharging a firearm at an unoccupied dwelling. See K.S.A. 21-4219 (now codified as K.S.A. 2018 Supp. 21-6308 ). Or criminal damage to property. See K.S.A. 2018 Supp. 21-5813. Or (maybe) discharging a firearm on the land of another without permission or from a public road or right-of-way. See K.S.A. 2018 Supp. 21-6308. While the similarity may be interesting, it does nothing to legitimize an otherwise illegitimate common-law crime. Sexton , 232 Kan. at 543, 657 P.2d 43 ("[A] criminal statute will not be 'extended by courts to embrace acts or conduct not clearly included within its prohibitions.' ") (quoting State v. Doyen , 224 Kan. 482, 488, 580 P.2d 1351 [ (1978) ] ).[4]
[4]I remain puzzled by why the prosecutor and defense lawyer handling Pollman's 2011 case felt the need to venture into the realm of common-law crimes to work out a disposition of the original offense of discharge of a firearm at an occupied vehicle, a severity level 7 person felony violation of K.S.A. 21-4219(b). Neither of those lawyers has been involved in this case, so we haven't had the opportunity to ask them. A plea bargain to the statutory crime of attempted discharge of a firearm would have been a severity level 9 person felony. See K.S.A. 2010 Supp. 21-3301. It would have had a slightly shorter presumptive guidelines sentence (7 to 9 months) than the invented common-law crime (9 to 11 months) based on Pollman's criminal history in 2011.
The extraordinary rule the majority propounds today limits plea bargaining only by the imagination of prosecutors, defense lawyers, and compliant district courts. We can *531 and should anticipate convictions for strange crimes. For example, a prosecutor with a witness problem in a robbery might plead the defendant to felony jaywalking as a severity level 8 nonperson offense. Jaywalking actually is a traffic infraction, but in no circumstance could it be a felony. See K.S.A. 8-1534(d) ; K.S.A. 2018 Supp. 8-2118(c). In another problem case, that prosecutor could reduce a severity level 4 aggravated battery to "excessive force self-defense"-a severity level 9 person felony entailing the common-law crime of using more nonlethal force than necessary in circumstances permitting self-defense. In some other judicial district, excessive force self-defense could be a severity level 7 person felony. Maybe it turns into a misdemeanor in yet another judicial district.
Prosecutors, of course, have tremendous discretion in their charging decisions and can engineer plea agreements to reduced statutory charges that differ markedly from what they originally file against a defendant with concomitant variances in punishment and implications for criminal history determinations. But those pleas conform to the legislative blueprint of what constitutes criminal conduct. Pleas to invented common-law crimes fall outside that blueprint and lack statutory and constitutional legitimacy. Any sense of consistency gets lost fast in a world of common-law crimes.
The majority doesn't really consider how a conviction for a common-law crime ought to be treated for various collateral purposes apart from scoring criminal histories. For example, a common-law felony involving some sort of sexual assault-say, defilement of a minor-might not require a defendant to comply with the Kansas Offender Registration Act, K.S.A. 22-4901 et seq. The crimes triggering registration and reporting obligations are for the most part keyed to specific statutory offenses. See K.S.A. 2018 Supp. 22-4902(c). The catch-all provisions likely wouldn't apply. K.S.A. 2018 Supp. 22-4902(c)(16), (c)(18). Under K.S.A. 2018 Supp. 22-4902(c)(16), the defendant must have been convicted of "an offense ... comparable to" one of the designated statutory crimes. The Legislature presumably intended to reach similar convictions from other jurisdictions rather than a conviction for a common-law crime in a Kansas court-something it sought to abolish by eliminating common-law crimes. The other catch-all in K.S.A. 2018 Supp. 22-4902(c)(18) requires a determination beyond a reasonable doubt that a particular act was "sexually motivated[,]" meaning "the defendant committed the crime" for his or her sexual gratification. The subsection presupposes the commission of a crime, a reference reasonably confined to what the Legislature itself has criminalized.
Pollman's 2011 conviction might have required him to register as a violent offender. See K.S.A. 2011 Supp. 22-4902(e)(2) (registration required for person felony conviction on or after July 1, 2006, if district court makes finding deadly weapon used). The record is unclear whether the district court considered or imposed KORA registration. A firearm fairly would be considered a deadly weapon. See Black's Law Dictionary 1827 (10th ed. 2014) (term "deadly weapon" includes "[a]ny firearm or other device ... [that] is calculated or likely to produce death"). The majority's conclusion today muddies the issue, since it says the 2011 common-law conviction should be treated as a nonperson felony for criminal history purposes-a peculiar twist I discuss later. But how it is scored as part of a criminal history wouldn't necessarily alter the underlying conviction itself as a person felony, since that's what the parties invented and the district court approved, assuming (as the majority holds) they could walk into the world of common-law crimes at all.
Similar uncertainty pervades how a conviction for a common-law crime invented as a felony ought to be treated for purposes of civil disabilities, such as the prohibitions on voting and holding public office, see K.S.A. 2018 Supp. 21-6613, and, perhaps of lesser importance, for purposes of expungement, see K.S.A. 2018 Supp. 21-6614. The Legislature has also determined that persons convicted of felonies may be denied licenses to work in various occupations. See, e.g., K.S.A. 2018 Supp. 2-2449(a) (pest control services); K.S.A. 2018 Supp. 47-830(e) (veterinary medicine); K.S.A. 65-1820a(a)(12) (barbering based on person felony); K.S.A. 65-6615(a)(2)
*532 (drug or alcohol addiction counselor). The Legislature presumably has made a studied determination of the occupations that ought to be closed to felons as a matter of public policy and has no intention of delegating the authority to identify the crimes triggering that detriment to prosecutors, defense lawyers, and district court judges manufacturing common-law offenses.
I weigh all of those considerations strongly against the idea the Legislature intended to permit plea bargaining to anything other than statutory crimes.
Majority Misapplies Judicial Reasoning by Analogy
In recognizing plea bargains and resulting convictions for common-law crimes, the majority relies on cases involving statutory crimes and misapplies their holdings by failing to recognize that factual circumstance as integral to those holdings. What the majority has done short-circuits judicial reasoning by analogy from case precedent to new situations that are materially different. The majority fails to acknowledge, let alone account for, the striking difference between statutory crimes and common-law crimes and, thus, constructs a false analogy to reach an erroneous result.
The majority relies heavily on the McPherson decision and the comparable holding in Spencer v. State , 24 Kan. App. 2d 125, 942 P.2d 646 (1997), aff'd on other grounds 264 Kan. 4, 954 P.2d 1088 (1998). So I start there to illustrate the problem with the majority's reasoning. McPherson filed a motion under K.S.A. 60-1507 attacking his earlier plea to attempted unintentional second-degree murder on the grounds no such crime actually could be committed. When McPherson entered his plea an attempt required the defendant to have the specific intent to commit the underlying crime. But that form of second-degree murder entailed an unintentional killing. The Kansas Supreme Court had held in State v. Shannon , 258 Kan. 425, 429, 905 P.2d 649 (1995), that a person could not form the specific mental intent to commit an unintentional killing, so the crime of attempted unintentional second-degree murder amounted to a legal impossibility. McPherson argued in his motion that his plea and conviction ought to be set aside for that reason.
This court held that McPherson should be bound to the result because: (1) He had been charged with attempted first-degree murder, a legally possible crime; (2) he received a benefit in the plea bargain to the reduced charge; and (3) he voluntarily and knowingly entered into the agreement. McPherson , 38 Kan. App. 2d at 284, 163 P.3d 1257. That's the pertinent holding and rule from McPherson . The crime at issue was attempted unintentional second-degree murder. Both unintentional second-degree murder and attempts were (and are) codified, statutory crimes. The Legislature enacted them consistent with its declaration that no conduct should be considered a crime if not included in the criminal code or elsewhere in the Kansas statutes. See K.S.A. 2016 Supp. 21-5103(a) ; K.S.A. 21-3102. So McPherson had nothing to do with a plea to a common-law crime-the factual circumstance here. And the court did not mention, let alone presume to consider or decide, the efficacy of a plea to a common-law crime.
Given the legislative banishment of common-law crimes, the holding of McPherson cannot simply be lifted from that case and applied to this one without some compelling explanation of why it should be considered analogous. Ultimately, I do not see how McPherson can be treated as comparable and, thus, guiding authority for the outcome here, given the marked differences between legislatively enacted statutory crimes and legislatively banished common-law crimes.
In applying the holdings of cases resting on judicially made rules rather than statutes, such as the ruling in McPherson , a court cannot simply detach those holdings from their factual underpinnings. Illinois v. Lidster , 540 U.S. 419, 424, 124 S. Ct. 885, 157 L.Ed. 2d 843 (2004) (Language in judicial opinions should be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering."); Armour & Co. v. Wantock , 323 U.S. 126, 132-33, 65 S. Ct. 165, 89 L.Ed. 118 (1944). In Armour , Justice Robert Jackson admonished lawyers *533 that "words of our opinions are to be read in light of the facts of the case under discussion." 323 U.S. at 133, 65 S.Ct. 165. And he cautioned: "General expressions transposed to other facts are often misleading." 323 U.S. at 133, 65 S.Ct. 165. The essential facts presented in a given case, then, reflect a critical part of any resulting judicial rule. When a court weighs the applicability of such a rule to a new set of facts, it should reason by analogy to determine the appropriateness of the rule to those circumstances. That is, the court should ask whether the significant facts of the case at hand are sufficiently similar to the case or cases in which the rule has been developed and applied to warrant the same treatment. United States v. Standefer , 610 F.2d 1076, 1100 (3d Cir. 1979) (Aldisert, J., concurring in part, dissenting in part) ("Recognition of the differences between the material facts of this case and those implicated in every case cited in support of the result reached by the majority leads me to conclude that the cases do not authoritatively support the majority's result."). If the facts are materially different, the rule may be inapplicable or applicable only in some form modified to account for those differences. Through that process, judge-made law develops more or less by accretion. See Stone, The Common Law in the United States , 50 Harv. L. Rev. 4, 5 (1936).
Chief Justice Harlan F. Stone explained development of precedent this way: "Decision has drawn its inspiration and its strength from the very facts which frame the issues for decision. Once made, the decision controls the future judgments of courts in like or analogous cases." 50 Harv. L. Rev. at 6. A decade later, Professor Edward H. Levi described that methodology as "reasoning by example." Levi, An Introduction to Legal Reasoning , 15 U. Chi. L. Rev. 501, 501 (1948). He explained the process: "[S]imilarity is seen between cases; next the rule of law inherent in the first case is announced; then the rule of law is made applicable to the second case." 15 U. Chi. L. Rev. at 501-02. In that process, "the scope of a rule of law, and therefore its meaning, depends upon a determination of what facts will be considered similar to those present when the rule was first announced." 15 U. Chi. L. Rev. at 502. More recently, Professor Cass R. Sunstein noted that reasoning by analogy continues to characterize judicial decision-making and legal advocacy. Sunstein, On Analogical Reasoning , 106 Harv. L. Rev. 741, 741 (1993). He offers a similar description of the analogical method. 106 Harv. L. Rev. at 745-46.
Advocates, thus, typically fashion appellate arguments through a like process of analogy. Each side cites cases that it contends are factually and legally comparable to the circumstances before the court and presses for application of the holdings in those cases and, therefore, a like outcome. See United States v. Strickland , 144 F.3d 412, 416 & n.4 (6th Cir. 1998). The advocates also attempt to distinguish their adversaries' case authority as less nearly analogous and ultimately inapplicable. The court replicates that process in sorting through the dueling case authority to arrive at a ruling. See Levi, 15 U. Chi. L. Rev. at 504.
Here, the majority abbreviates that process of reasoning-by-analogy and reflexively invokes the rule from McPherson without accounting for the compelling factual difference between that case and this one. The difference-rooted in legislative abandonment of common-law crimes-requires a carefully reasoned rationale to warrant even considering the McPherson rule here. See Sunstein, 106 Harv. L. Rev. at 757 ("[A]nalogical reasoning can go wrong when ... some similarities between two cases are deemed decisive with insufficient investigation of relevant differences."). None is forthcoming. By truncating that process, the majority effectively expands a rule to a new and materially different situation for which it is neither obviously required by precedent nor irrefutably a proper approach for the new. The majority purports to do no more than follow precedent, but its opinion actually expands that precedent to reach an unwarranted and impermissible outcome.
The other Kansas appellate cases the majority cites don't fill in the factual and legal gap between the reasoning and holding in McPherson and the circumstances here. In Spencer , the court declined to set aside a plea to and conviction for attempted aggravated *534 assault-a crime it characterized as "nonexistent" based on State v. Martinez , 20 Kan. App. 2d 824, 834, 893 P.2d 267 (1995), which reasoned that a defendant could not be guilty of an attempted assault if the victim never perceived the threat and, thus, was never placed in apprehension of bodily harm. 24 Kan. App. 2d at 126, 129, 942 P.2d 646. The court found the plea to be appropriate because Spencer had been charged with aggravated battery, realized a benefit from pleading to a reduced charge, and did so knowingly and voluntarily, reflecting the same considerations the McPherson court later endorsed. 24 Kan. App. 2d at 129, 942 P.2d 646. But, as with McPherson , the plea in Spencer rested on a statutory crime (aggravated assault) and a statutorily recognized principle of criminal liability (attempt). The court didn't mention, let alone discuss, the ramifications of a plea to a common-law crime. On review, the Kansas Supreme Court held that attempted aggravated assault as then defined was, in fact, a crime and affirmed the denial of relief to Spencer for that reason, rejecting the rationale underlying this court's opinions in Spencer and Martinez . Spencer , 264 Kan. at 4-5, 954 P.2d 1088. As a result, the Kansas Supreme Court didn't address the boundaries of appropriately plea-bargained offenses and convictions.
The majority also relies on Easterwood v. State , 273 Kan. 361, 44 P.3d 1209 (2002), although it is far afield. Easterwood pleaded guilty to felony murder with a favorable sentencing recommendation from the State along with the dismissal of other felony charges. The factual circumstances involved an armed robbery that went awry. Law enforcement officers arrived as the holdup was going on and fatally shot Easterwood's partner after he shot at them. That was the killing underlying the felony-murder charge.
Felony murder is a statutory crime, and at the time Easterwood pleaded, those factual circumstances were at least consistent with a conviction. Nearly five years later, the Kansas Supreme Court held that felony murder does not apply when the death of a participant in the predicate crime results from the actions of law enforcement officers or a resisting victim. See State v. Sophophone , 270 Kan. 703, 19 P.3d 70 (2001) (law enforcement actions causing death); State v. Murphy , 270 Kan. 804, 19 P.3d 80 (2001) (victim actions causing death), abrogated on other grounds by State v. Martin , 285 Kan. 735, 175 P.3d 832 (2008). Based in part on those decisions, Easterwood sought habeas corpus relief under K.S.A. 60-1507 to set aside his plea and conviction. The court held that Easterwood's plea conformed to the law governing felony murder when he entered it. He could have challenged the felony-murder rule then but chose not to in preference to the favorable plea deal. The court, therefore, declined to allow Easterwood to collaterally attack the resulting conviction years later based on an intervening change in the law. 273 Kan. at 382-84, 44 P.3d 1209.
As with Spencer and McPherson , the Easterwood decision has nothing to say about pleas to and convictions for common-law crimes. The court most certainly did not condone the practice of prosecutors, defense lawyers, and district courts inventing crimes to dispose of cases. The decision neither directly nor indirectly supports the rule the majority announces. And it does not preclude the transactional cost I would impose to discourage what actually amounts to an improper usurpation of legislative authority.
The out-of-state cases the majority cites as a backstop for its peculiar use of common-law crimes in plea bargaining are no more apt than Easterwood , Spencer , and McPherson . See People v. Myrieckes , 315 Ill. App. 3d 478, 485, 248 Ill.Dec. 480, 734 N.E.2d 188 (2000) (court held defendant cannot challenge on appeal sufficiency of evidence to support voluntary plea to statutory crime and recognized general proposition without elaboration that defendant may plead to "nonexistent crime"); People v. Genes , 58 Mich. App. 108, 109-12, 227 N.W.2d 241 (1975) (upholding plea to attempted manslaughter, a statutory crime, even though record showed completed crime and mental state for attempt to commit involuntary manslaughter legally impossible); People v. Foster , 19 N.Y.2d 150, 152-53, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967) (upholding conviction on plea to attempted manslaughter in second degree, a statutory crime, although mental state for attempt may *535 be logically inconsistent with mental state for completed crime); People v. Griffin , 7 N.Y.2d 511, 516, 199 N.Y.S.2d 674, 166 N.E.2d 684 (1960) (defendant properly allowed to plead to attempted assault in second degree, a statutory crime, that differed factually from more serious crime originally charged, although outcome may be considered "a hypothetical situation without objective [factual] basis"); People v. Guishard , 15 A.D.3d 731, 732, 789 N.Y.S.2d 332 (N.Y. App. Div. 2005) (upholding conviction on plea to attempted assault in the first degree, a statutory crime, although attempt deemed legal impossibility); People v. Barker , 221 A.D.2d 1018, 635 N.Y.S.2d 383 (N.Y. App. Div. 1995) (same, plea to attempted manslaughter in the first degree); People v. Castro , 44 A.D.2d 808, 808, 356 N.Y.S.2d 49 (N.Y. App. Div. 1974) (rejecting challenge to sufficiency of defendant's factual admission in support of plea to voluntary manslaughter in first degree, a statutory crime, and noting in dicta without cited authority defendant may plead to "hypothetical crime [that] has no elements"), aff'd 37 N.Y.2d 818, 376 N.Y.S.2d 922, 339 N.E.2d 620 (1975).
As a generic or abstract legal statement, the bare holding in McPherson arguably would fit here only because the opinion doesn't explicitly link the holding itself to statutory crimes or explicitly exclude common-law crimes. But a case holding can't properly be applied by rote in that way precisely because the material facts necessarily inform the scope of the rule. The holdings in McPherson , Spencer , and the other cases all deal with statutory crimes without considering common-law crimes. Given the doubtful viability of common-law crimes in Kansas, there is no good reason to presume the McPherson court intended to permit-or even considered-what the majority does today. Absent a compelling articulation of why McPherson and the other cases are sufficiently analogous to plea bargaining for common-law crimes, they offer no obviously sound analytical support for the majority's foray into what looks like unknown (and legally dangerous) territory. The majority, then, simply ignores a fundamental difference between those cases and this one that render them inapposite.[5]
[5] The McPherson decision and the other cases are also distinguishable in that those defendants were trying to set aside their convictions. Pollman isn't challenging his 2011 conviction, only how it should be scored for criminal history purposes in this case. We have no authority in this case to vacate the 2011 conviction even if we were disposed to do so. Although the district court should never have accepted Pollman's plea to a common-law crime in 2011, the conviction itself may fall in the category of what's done is done. By the same token, however, we do have the authority to say how the 2011 conviction should be treated in determining Pollman's criminal history in this case. The illegitimate foundation of the conviction in a statutorily unrecognized common-law crime requires that we discount it.
Majority's Coda of Contradiction
In the coda to its opinion, the majority finds the common-law crime of discharging a firearm at an unoccupied vehicle must be treated as an unclassified, omitted, or unranked felony under K.S.A. 2016 Supp. 21-6807(c) and, therefore, should be scored as a nonperson offense in determining Pollman's criminal history in this case. That conclusion, however, ostensibly endorses legislative regulation of a conviction for a common-law crime. So it conflicts with the majority's premise that plea bargains to common-law crimes should be allowed in derogation of the Legislature's abolishment of those crimes. Those two themes are, at the very least, difficult to reconcile into an entirely coherent approach to plea bargaining to common-law crimes-a dissonance that suggests jurisprudential mistake.
The majority first says pleas to and convictions for common-law crimes are not among the convictions excluded from criminal history determinations in K.S.A. 2016 Supp. 21-6810(d), which outlines the treatment of various categories of convictions. Although that's true, K.S.A. 2016 Supp. 21-6810 operates within the overarching legislative directive in K.S.A. 2016 Supp. 21-5103(a) that crimes are limited to conduct criminalized in the Kansas Criminal Code or in other statutes. And, in *536 turn, only conduct codified as such can result in convictions. By legislative design, K.S.A. 2016 Supp. 21-6810 deals only with convictions for statutory crimes. Common-law crimes and convictions logically go unmentioned in K.S.A. 2016 Supp. 21-6810 because the Legislature has abolished them. No need or good purpose would be served in explicitly excluding something that doesn't exist. The majority ignores that impediment and proceeds to compound its illogic.
Under the 2011 plea agreement, the prosecutor and Pollman's lawyer treated their invented common-law crime as a severity level 8 person felony. The district court accepted that invention and imposed a guidelines sentence consistent with a severity level 8 felony. So the punishment range was driven by that treatment coupled with Pollman's criminal history in 2011.
The majority then says the 2011 common-law conviction is properly considered a felony because the penalty entailed a term of incarceration in a state prison and, thus, met the statutory definition of a felony in K.S.A. 2016 Supp. 21-5102(a). To get there, the majority must give legal effect to the decision of the parties and the district court in ascribing some severity level to the crime, thereby making it a felony. If the ascription were discarded, discharging a firearm at an unoccupied vehicle would carry no defined penalty. That would make it a misdemeanor under the catch-all in K.S.A. 2016 Supp. 21-5102(d) for criminal conduct not otherwise classified as a felony, a traffic infraction, or a cigarette or tobacco infraction, and, in turn, an unclassified misdemeanor under K.S.A. 2016 Supp. 21-6602(a)(4). It would be scored as a nonperson misdemeanor. K.S.A. 2016 Supp. 21-6810(d)(6).
But the majority then retreats from accepting the particular designation the parties and the district court gave discharging a firearm at an unoccupied vehicle as a person offense rather than a nonperson offense and as a severity level 8 offense. The majority reasons that the common-law crime has been " 'omitted from the crime severity scale' " and should be " 'considered [a] nonperson felon[y]' " under K.S.A. 2016 Supp. 21-6807(c)(2). op. at 525. This abrupt about-face is mystifying. The parties and the district court gave it a severity level on the scale. The Legislature hasn't-it doesn't recognize discharging a firearm at an unoccupied vehicle as a crime at all. But if the parties and the district court have some sort of inherent authority to ignore K.S.A. 2016 Supp. 21-5103(a) to invent a common-law crime for a plea bargain, why doesn't that authority similarly permit them to ignore K.S.A. 2016 Supp. 21-6807(c)(2) to assign their invention a particular severity level or to treat it as a person felony? And if they can't assign a severity level, by what authority do they get to declare their invention a felony at all-a declaration the majority accepts without question or reservation?
It seems to me the majority's plea-bargaining beast requires unwavering allegiance. If the parties and the district court can make up crimes for plea-bargained convictions as the majority erroneously posits, they ought to be able to designate them as person or nonperson offenses and assign a felony the severity level they choose. I don't see how fealty to the beast stops at simply naming the crime and treating it as some generic felony. Or examining this thing from the legislative perspective, either the statutory scheme for criminalizing conduct and punishing crimes governs or it doesn't. There is no halfway.
The majority's beast is both demanding and messy. I dissent from its creation.